UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEUN OGUNKOYA,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF MONROE; SANDRA DOORLEY, individually and as District Attorney of Monroe County; MARK MONAGHAN, individually and as a Bureau Chief of Monroe County; JAMES EGAN individually and as an Assistant District Attorney of Monroe County; ALBERT DRAKE III, individually and as an investigator with the New York State Police; DARIUSZ ZYSK, individually and as a trooper with the New York State Police;  MARK E. EIFERT, individually and as an investigator with the New York State Police; PETER SCHRAGE, individually and as a trooper with the New York State Police; and JOHN DOE AND RICHARD ROE (names and number of whom are unknown at present), and other unidentified members of the New York State Police,<br><br>Defendants. | Civil Action No. 15 CV 06119 KAM-LB<br><br>SECOND AMENDED COMPLAINT<br><br>Jury trial demanded |

## PRELIMINARY STATEMENT

1.      This is a civil rights action to recover money damages arising out of defendants'

violation of plaintiff's rights as secured by the Civil Rights Act, 42 U.S.C. §1983, and of

rights secured by the Fourth and Fourteenth Amendments to the United States

Constitution.  Plaintiff Seun Ogunkoya, a Lieutenant in the U.S. Army National Guard,

was arrested in his home in Brooklyn, New York, without a warrant.  The arrest by

officers of the New York State Police was based solely on six criminal complaints that

were prepared by an investigator with the New York State Police hundreds of miles away. At no time before they arrested Lt. Ogunkoya did any of the defendants seek to present evidence to a court to obtain a warrant. After his arrest in his home in Brooklyn, Defendants drove Lt. Ogunkoya over 300 miles to Monroe County, New York, where officers of the New York State Police brought him to a judge for arraignment on the six complaints. Lt. Ogunkoya was arraigned by the judge on only two of the six complaints. Defendants deliberately chose not to arraign Lt. Ogunkoya on the remaining four complaints. Defendants' failure to arraign Lt. Ogunkoya on the four remaining complaints had serious consequences. Without an arraignment on these complaints, he was unable to arrange for bail. As a result, Lt. Ogunkoya spent the next 28 days in prison, and during those 28 days, Lt. Ogunkoya lost his job, was unable to take his bar examination, and suffered additional harms and injuries. Lt. Ogunkoya was eventually indicted on only three of the six complaints (only one of which he had been arraigned on) and was ***acquitted following a jury trial***. By this action, Lt. Ogunkoya seeks redress for the actions taken by defendants, which deprived him of his constitutional rights and caused him significant harm.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §1983 and 42 U.S.C. §1988. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a).

3.     Venue properly lies in the Eastern District of New York under 28 U.S.C. § 1391(b), as the deprivation of rights complained of herein occurred within the Eastern District of New York.

**THE PARTIES**

4.      At all relevant times, plaintiff Seun Ogunkoya was and is a citizen of the United States, the State of New York and Kings County.

5.      Defendant the County of Monroe was and is a municipal corporation, chartered by the New York State Legislature, and existing under and by virtue of the laws of the State of New York.

6.      Defendant the County of Monroe maintains the Monroe County District Attorney's Office, a duly authorized public authority, authorized to perform all functions of a legal department as agent for and acting under the direction and supervision of the aforementioned municipal corporation, the County of Monroe.

7.      Defendant Sandra Doorley ("DA Doorley") was the duly sworn District Attorney of Monroe County at all relevant times. In this capacity she was in a policy-making position and was otherwise responsible for setting and overseeing policies, customs and practices at the Monroe County District Attorney's Office. At all relevant times DA Doorley was acting under the color of law. She is sued in her individual and official capacity.

8.      Defendant Mark Monaghan ("Bureau Chief Monaghan") was a duly sworn Chief of the Economic Crimes Bureau of Monroe County at all relevant times with Monroe County District Attorney's Office, located at 47 S. Fitzhugh Street in the City of Rochester, in the County of Monroe in the State of New York. Bureau Chief Monaghan was acting under the supervision of said office and according to his official duties. At all relevant times Bureau Chief Monaghan was acting under the color of law. He is sued in his individual and official capacity.

3

9.      Defendant James Egan ("ADA Egan") was a duly sworn Assistant District

Attorney of Monroe County at all relevant times with Monroe County District Attorney's

Office, located at 47 S. Fitzhugh Street in the City of Rochester, in the County of Monroe

in the State of New York.  ADA Egan was acting under the supervision of said office and

according to his official duties.  At all relevant times ADA Egan was acting under the

color of law.  He is sued in his individual and official capacity.

10.     Defendants Doorley, Monaghan, and Egan are collectively referred to in this

Complaint as the "Monroe County Defendants."

11.     Defendant Albert Drake III ("Investigator Drake") is an Investigator with the New

York State Police's Troop NYC, Brooklyn Criminal Squad, located at 1 Wards Island,

New York, NY 10035.  Investigator Drake was acting under the supervision of said office

and according to his official duties.  At all relevant times Investigator Drake was acting

under the color of law.  He is sued in his individual and official capacity.

12.     Defendant Dariusz Zysk ("Trooper Zysk") is a Trooper with the New York State

Police, Brooklyn Criminal Squad, located at 1 Wards Island, New York, NY 10035.

Trooper Zysk was acting under the supervision of said office and according to his official

duties.  At all relevant times Trooper Zysk was acting under the color of law.  He is sued

in his individual and official capacity.

13.     Defendant Pete Schrage ("Trooper Schrage") is a Trooper with the New York

State Police, Troop E, located in Canandaigua, New York.  Trooper Schrage was acting

under the supervision of said office and according to his official duties.  At all relevant

times Trooper Schrage was acting under the color of law.  He is sued in his individual

and official capacity.

14.     Defendant Mark E. Eifert ("Investigator Eifert") is an Investigator with the New York State Police, Troop E., located in Canandaigua, New York. Investigator Eifert was acting under the supervision of said office and according to his official duties.  At all relevant times Investigator Eifert was acting under the color of law.  He is sued in his individual and official capacity.

15.     Defendants Drake, Schrabe, Zysk and Eifert are collectively referred to in this Complaint as the "New York State Defendants."

## STATEMENT OF FACTS

16.     On February 20, 2015, Plaintiff Ogunkoya was 34 years old.  He had never been arrested and had no criminal history.

17.     Lt. Ogunkoya studied law in Nigeria, receiving an LLB from the University of Lagos.  In 2009, he earned an LLM at the University of Houston, and was scheduled to take the New York Bar Examination on February 24 and 25, 2015.

18.     Lt. Ogunkoya is a member of the U.S. Army National Guard, and was a Second Lieutenant on February 20, 2015.  He is now a First Lieutenant.

19.     Upon information and belief, on April 26, 2014, gift cards worth $28,000 were purchased in Home Depot stores in three towns in Monroe County, New York.  The three towns are Greece, Irondequoit and Henrietta.

20.     Upon information and belief, Home Depot reported these purchases to the New York State Police on April 30, 2014.  A criminal investigation was commenced by the New York State Police, headed by Investigator Eifert, who is stationed in the New York State Troopers' barracks in Canandaigua, in Monroe County.

21.     During the course of his investigation, Investigator Eifert learned that Lt.

Ogunkoya had used his personal credit card to make small purchases at the Home Depots

in Greece and Henrietta at or around the time that the gift cards were purchased.  Upon

information and belief, Investigator Eifert also reviewed surveillance tapes from two of

the Home Depots that were recorded at or around the time that the gift cards were

purchased.  The tapes showed that a person other than Lt. Ogunkoya had purchased the

gift cards.

22.     On January 20, 2015, Investigator Eifert prepared six felony complaints in which

he affirmed that Lt. Ogunkoya had used a credit card in the name of David N. Bolak to

obtain goods in Irondequoit, New York; a credit card in the name of Daryl P. Pietrocarlo

to obtain goods in Greece, New York; and a credit card in the name of Merton A.

Fernaays to obtain goods in Henrietta, New York.  The complaints alleged a count of

identity theft in the first degree and a count of grand larceny in the third degree with

respect to each of these three separate credit card transactions, for a total of six

complaints.  The complaints are attached as Exhibit 1 to this complaint.

23.     In each complaint, Investigator Eifert made his allegations of fact "upon

information and belief, with the sources of Complainant's knowledge and the grounds for

belief being the facts contained in the POLICE DEPARTMENT INVESTIGATION,

VIDEO SURVEILLANCE."  On the form used for the complaints, Investigator Eifert

deleted the phrase "attached SUPPORTING DEPOSITION," and did not attach any

supporting deposition.

24.     Upon information and belief, Investigator Eifert contacted employees of the New York State Police Department located in Brooklyn, New York on or around February 11, 2015.

25.     Neither Investigator Eifert nor any other employee of the New York State Police Department sought a warrant for the arrest of Lt. Ogunkoya, either at that time or any other time.  Thus there was no judicial determination of probable cause to arrest Lt. Ogunkoya.

26.     On the morning of February 20, 2015, Lt. Ogunkoya was getting ready for work in his apartment at 1334 Blake Avenue in Brooklyn, New York.  Since October 2013, he had been working at Graham Windham, which provides programs to underprivileged children.

27.     Lt. Ogunkoya heard the doorbell ring downstairs and saw two men in black suits and black overcoats at the door.  He went downstairs partially dressed and asked them their business through the storm door.  The men showed him ID cards, which reflected that the men were Investigator Drake and Trooper Zysk.  They told him that they wanted him come downtown because they needed help getting information on some identity thefts.  Lt. Ogunkoya told them he needed to get dressed and asked them up to his apartment.  Investigator Drake and Trooper Zysk followed him upstairs and into his apartment.  They did not announce that they had any plan to arrest Lt. Ogunkoya.

28.     In the apartment, Lt. Ogunkoya went into another room where he had been ironing a shirt.   Investigator Drake and Trooper Zysk followed him closely into the other room.  Lt. Ogunkoya then asked them whether he was under arrest.  They told him that he was under arrest.  They handcuffed Lt. Ogunkoya.

29.     Investigator Drake and Trooper Zysk then escorted Lt. Ogunkoya to their car. When Lt. Ogunkoya was inside their car, he informed Investigator Drake and Trooper Zysk that he would like to consult with a lawyer.

30.     While he was in the car, Lt. Ogunkoya also asked Investigator Drake and Trooper Zysk to see an arrest warrant.  Intentionally attempting to mislead Lt. Ogunkoya, Investigator Drake gestured to a folder he was holding and told Lt. Ogunkoya that everything was in the folder.

31.      Investigator Drake told Lt. Ogunkoya that he could not see what was in the folder because he had invoked his right to counsel.

32.     When they arrived at the station house in Brooklyn, Lt. Ogunkoya again asked to see the charges against him.  Investigator Drake told Lt. Ogunkoya that he could see what was in the folder if he waived his right to an attorney.

33.     At the station house, neither Investigator Drake nor Officer Zysk asked Lt. Ogunkoya any questions about the identity fraud investigation.  They did not arrange for any lawyer to represent him.

34.     Following the warrantless arrest and taking of Lt. Ogunkoya into custody, Investigator Drake and Trooper Zysk determined not to take Lt. Ogunkoya to a nearby magistrate for arraignment.

35.     Instead, the New York State Police Department arranged for Lt. Ogunkoya to be transported in handcuffs to Canandaigua, New York in four stages.  First, Investigator Drake drove him handcuffed to Middletown, New York, in Orange County.  Investigator Drake then handed him and the folder over to another employee of the New York State

Police Department. Lt. Ogunkoya asked for the third time to see the charges against him. His request was denied. Lt. Ogunkoya was driven handcuffed from Middletown, New York to Liberty, New York, in Sullivan County, then from Liberty to a third stop, and finally to Canandaigua, where he arrived after a trip of at least ten hours. At each stop the folder was passed along and at each stop he asked to see the charges and was told no.

36.     At or around 8:30 p.m. on Friday, February 20, Lt. Ogunkoya arrived in the office of the New York State Police in Canandaigua, New York, in Ontario County. Trooper Schrage telephoned Investigator Eifert and, within Lt. Ogunkoya's hearing, told Investigator Eifert that he would ask a judge to arraign Lt. Ogunkoya on all six felony counts.

37.     At or around 10:00 p.m. on February 20, Trooper Schrage, together with another New York State trooper, brought Lt. Ogunkoya to the Town Court in the town of Henrietta, in Monroe County. Trooper Schrage attempted to have Lt. Ogunkoya arraigned on all six complaints.

38.     Trooper Schrage filed all six complaints with the Henrietta court.

39.     The presiding judge, Hon. James Beikirch, stated, in words or substance, that he was not willing to arraign Lt. Ogunkoya on the four complaints that charged conduct in Greece and Irondequoit because he lacked jurisdiction to do so. Judge Beikirch arraigned Lt. Ogunkoya only on the two complaints that charged conduct that occurred in the town of Henrietta.

9

40.    Judge Beikirch instructed Trooper Schrage and the other New York State Trooper to give Lt. Ogunkoya copies of the felony complaints on which he was arrested. Trooper Schrage gave Lt. Ogunkoya all six of the felony complaints.

41.    Judge Beikirch told Trooper Schrage and the other New York State Trooper that Lt. Ogunkoya should be taken for arraignment on the remaining four complaints before judges in the towns of Greece and Irondequoit. Trooper Schrage and/or the other New York State Trooper represented to the court that Lt. Ogunkoya would be arraigned on the other charges by the following business day (which was Monday, February 23).

42.    In direct contradiction to their representation to the court, defendants did not take Lt. Ogunkoya for arraignment on the remaining four complaints before judges in the towns of Greece and Irondequoit, either on February 23 or at any time.

43.    Lt. Ogunkoya was never arraigned on four of the six complaints for which he was arrested.

44.    Following the arraignment on two of the six counts, Lt. Ogunkoya was remanded to the Monroe County Jail.

45.    Following his warrantless arrest, Lt. Ogunkoya was incarcerated in the Monroe County Jail for more than 48 hours even though he had been arraigned on only two of the six complaints that were the basis for his arrest. With respect to the other four counts there was never any judicial determination of probable cause throughout the course of his incarceration.

46.    Lt. Ogunkoya retained a lawyer and, on Monday, February 23, his lawyer faxed a letter to the clerks of Monroe County and Supreme Court, with a copy to DA Doorley,

requesting that Lieutenant Ogunkoya be immediately scheduled for an appearance before a County or Supreme Court Justice for arraignment and a bail application.  The letter stated that Lt. Ogunkoya was scheduled to take the bar examination the following day.

47.     On Monday, February 23, Hon. Victoria Argento, a judge in the Monroe County Court, which is located in Rochester, New York, held a bail hearing with respect to Lt. Ogunkoya.

48.     At the hearing, counsel for Lt. Ogunkoya requested that he be arraigned on the charges in Greece and Irondequoit.  There was a discussion about whether he could be arraigned in the other courts in time for a new bail application to be made on all the charges so that he could travel to New York City in time for the bar examination on Tuesday, February 24.

49.     Bureau Chief Monaghan and ADA Egan argued for $100,000 cash/$300,000 bond, based on the combined allegations of the six felony complaints.  This amount of bail is unusually high considering the amount of the alleged thefts ($28,000) and local custom.

50.     At the bail hearing, Bureau Chief Monaghan and ADA Egan stated that Lt. Ogunkoya was a flight risk.  One or both of them stated that Lt. Ogunkoya was from Nigeria "the headquarters of fraud" and a resident of Brooklyn, a borough known for fraud.

51.     Judge Argento set bail at $100,000 cash/$300,000 bond.

52.     On Tuesday, February 24, Investigator Eifert made two phone calls to the Monroe County District Attorney's Office. He left this message: "What to do re: Greece, Irondequoit."

53.     Investigator Eifert's message was returned the following day. He was told "Hold for now. [Defendant] not posted bail."

54.     On Wednesday, February 25, Lt. Ogunkoya's relatives arranged for bail by satisfying conditions for a $300,000 bond. The bail bondsman expressed reluctance at posting a bond when Lt. Ogunkoya had not been arraigned on four of the six complaints.

55.     On Friday, February 27, Lt. Ogunkoya's lawyer informally sought an arraignment on the four charges by emailing ADA Egan. He told ADA Egan that he had heard from the Greece Court Clerk that ADA Egan had asked the court to hold off on scheduling an arraignment.

56.     This was the response that Lt. Ogunkoya's lawyer received from ADA Egan: "There is no need to ever arraign him on the charges in local court. He was arrested on the Henrietta charges and received his prompt arraignment on them as required by the CPL. The purpose of CPL 140.20 is to ensure a person who is arrested gets a prompt arraignment and doesn't have to sit in jail waiting for bail to be set. The other charges are essentially "sealed" charges since he has **never been arrested or arraigned on them**. In any event, they were all referred to the grand jury and they will be presented together. **This is done frequently in cases involving charges in multiple jurisdictions**." [Emphasis added]

57.     Not succeeding with this informal approach, Lt. Ogunkoya's lawyer sought a writ commanding the arraignment of Lt. Ogunkoya on the four complaints on which he had not yet been arraigned.   These four complaints allege larceny and identity theft in the towns of Greece and Irondequoit.   An affirmation submitted with the writ application set forth the factual basis for the application.  The affirmation stated that Lt. Ogunkoya was prepared to post a $300,000 bond but that the bail bondsman refused to post the bond solely because of the unarraigned charges.  The affirmation disclosed that the bail bondsman was concerned that if Lt. Ogunkoya were released he would immediately be rearrested.

58.     On or around March 2, the bail bondsman decided not to post bail and the property posted by Lt. Ogunkoya's relatives was refunded and/or returned.  The bail bondsman did want to post bail because of the possibility that as soon as he was released Lt. Ogunkoya would be arrested on the four counts on which he had not arraigned.

59.     On March 4, Lt. Ogunkoya's lawyer wrote to Bureau Chief Monaghan, requesting the immediate arraignment of his client on all charges.  His letter refers to an eJustice sheet showing that Lt. Ogunkoya was arrested on the Greece charges as well as the Henrietta charges.  The Number for the Greece Charges was Arrest #648591.  Person or persons unknown redacted the Irondequoit charges from the eJustice report.  No hearing was scheduled or held in response to this request and Lt. Ogunkoya remained in custody.

60.     On March 17, 2015, Lt. Ogunkoya's relatives approached the bail bondsman on his behalf for a second time.

61.     The Hon. Vincent Dinolfo of Monroe Count Court requested a conference on March 18, 2015.  Judge Dinolfo stated that he would sign the bond documents.

62.     On March 20, 2015, after Lt. Ogunkoya had been incarcerated for 28 days, Judge

Dinolfo signed the bond documents and Lt. Ogunkoya was released.

63.     On or about May 15, 2015, the Grand Jury returned a true bill of indictment

against Lt. Ogunkoya. Upon information and belief, that indictment was filed with the

Monroe County Clerk by either D.A. Sandra Doorley, Bureau Chief Mark Monoghan,

A.D.A. James Egan, or an agent of the Monroe County District Attorney under the

direction of that office.  The indictment charged Lt. Ogunkoya with three counts of

identity theft in the first degree.  The indictment did not contain any counts charging Lt.

Ogunkoya with larceny.  Thus, with respect to the two counts of larceny based on

transactions in the towns of Greece and Irondequoit, there was neither an arraignment nor

any indictment.

64.     The first count of the indictment charged Lt. Ogunkoya with assuming the

identity of David Bolak, the cardholder whose credit card been used in Irondequoit.  The

second count charged him with assuming the identity of Daryl Pietrocarlo, the cardholder

whose credit card been used in Greece.  The third count charged him with assuming the

identity of Merton Fernaays, the cardholder whose credit card that been used in Henrietta.

These three counts correspond to the three felony complaints charging Lt. Ogunkoya with

false impersonation.

65.     The indictment did not set forth the locations of each of the uses of the three

different credit cards.  Instead, it alleged only that the defendant had assumed the

identities of these three individuals "in the County of Monroe."  This omission disguised

the location of the three different events, giving the false appearance that they had all

occurred in one place.

66.     Following a jury trial, Lt. Ogunkoya was acquitted on all three counts.

67.     After the trial, a certificate of disposition was issued by the County Clerk of the County of Monroe.  The County Clerk certified that the document reflected a true and accurate record of the defendant.  The certificate falsely reflects that the agency for all three offenses was "State Police-Henrietta."   That is an accurate statement with respect only to one of the offenses.

68.     Defendants' violations of the U.S. Constitution, malicious prosecution, false arrest, false imprisonment, and failure to intervene caused plaintiff to suffer humiliation, substantial expense, monetary loss, loss of liberty, loss of his job, and psychological and emotional trauma.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Violation of Plaintiff's
### Fourth and Fourteenth Amendment Rights

69.     Plaintiff repeats and realleges each and every allegation contained in paragraphs marked 1 through 68 as if fully set forth herein

70.     Defendants caused plaintiff to be arrested without a warrant in his home, taken into custody and not arraigned within the constitutionally mandated period, imprisoned, and criminally prosecuted without probable cause, in violation of plaintiff's right to be free of an unreasonable seizure under the Fourth Amendment to the United States Constitution and to be free of a deprivation of liberty under the Fourteenth Amendment to the United States Constitution.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 False Arrest and False Imprisonment

71.     Plaintiff repeats and realleges each and every allegation contained in paragraphs

marked 1 through 68 as if fully set forth herein

72.     The acts and conduct of the New York State defendants constitute false arrest, and

the acts and conduct of the Monroe County defendants and the New York State

defendants constitute false imprisonment, under the laws of the State of New York and

under the Fourth Amendment to the United States Constitution.

73.     Defendants intended to confine plaintiff and, in fact, confined plaintiff.

74.     Plaintiff was conscious of the confinement, and did not consent to defendants'

confinement of plaintiff.

75.     Defendants' confinement of Plaintiff was not otherwise privileged.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 Malicious Prosecution

76.     Plaintiff repeats and realleges each and every allegation contained in paragraphs

marked 1 through 68 as if fully set forth herein.

77.     The acts and conduct of the Monroe County defendants constitute malicious

prosecution under the laws of the State of New York and under the Fourth Amendment to

the United States Constitution.

78.     The Monroe County defendants initiated and continued a prosecution and

criminal proceeding against plaintiff.

79.     The prosecution and criminal proceeding terminated in plaintiff's favor and he

was acquitted on all charges.

80.     There was a lack of probable cause for all or some of the charges on which

Plaintiff was prosecuted.

81.     The Monroe County defendants' actions were motivated by actual malice in the form of reckless disregard for Plaintiff's constitutional rights.

### FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983 Failure to Intervene

82.     Plaintiff repeats and realleges each and every allegation contained in paragraphs marked 1 through 68 as if fully set forth herein.

83.     The acts and conduct of the New York State defendants and Monroe County defendants constitute failure to intervene under the laws of the State of New York and the Fourth and Fourteenth Amendments to the United States Constitution.

84.     Defendants had a realistic opportunity over the 28 days of Plaintiff's incarceration to intervene and prevent the harm to plaintiff in the form of violation of his constitutional rights.

85.     Defendants knew that Plaintiff's constitutional rights were being violated.

86.     Defendants did not take reasonable steps to intervene and prevent or cure the violation of Plaintiff's constitutional rights.

### FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 Municipal Liability

87.     Plaintiff repeats and realleges each and every allegation contained in paragraphs marked 1 through 68 as if fully set forth herein

88.     The Monroe County Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the County of Monroe that is forbidden by the U.S. Constitution.

17

89.     The aforementioned customs, usages, practices, procedures or rules of Defendant County of Monroe included, but were not limited to, policies, customs and practices wherein prosecutors arrest suspects on crimes in multiple jurisdictions, arraign them on only a subset of the charges, and treat the other charges as "sealed," a practice that unconscionably disregards the purpose of arraignments and their role in setting bail.

90.     The County of Monroe systematically failed adequately to train its prosecutors to treat arraignments as constitutional right; to obtain probable cause to ensure that suspects would not be falsely arrested or maliciously prosecuted; and promptly to arraign arrested suspects within constitutionally mandated time limits.

91.     The aforementioned customs, usages, practices, procedures or rules of Defendant County of Monroe were the moving force behind the violation of Plaintiff's constitutional rights as set forth in this complaint and were the direct and proximate cause of the constitutional violations suffered by the Plaintiff.

92.      As a result of the failure of the County of Monroe to properly train and supervise its prosecutors, including the Monroe County Defendants, the County of Monroe has effectively authorized, ratified and been deliberately indifferent to the acts and conduct complained of herein.

93.     Plaintiff suffered injuries in the form of violations of his constitutional rights as a result of actions pursuant to the official customs, policies, usages, practices, procedures and rules described above.

94.    The Monroe County Defendants collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff's constitutional rights.

## JURY DEMAND

95.    Plaintiff demands a trial by jury of all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

That the jury find and the Court adjudge and decree that:

(a) Plaintiff shall recover compensatory damages in the sum of $100,000 against the defendants, jointly and severally, together interest and costs; and punitive damages in the sum of $2,000,000 against the defendants, jointly and severally.

(b) Plaintiff shall recover the cost of the suit herein, including reasonable attorneys fee pursuant to 42 U.S.C. § 1988.

19

(c) Plaintiff shall have such other and further relief as the Court shall deem just

and proper.


Dated: New York, New York
       August 16, 2016

By:  _____/s/_____

Dorothy Heyl (1601)
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, New York10005-1413
(212) 530-5000
(212) 530-5088 (facsimile)
dheyl@milbank.com

*Attorneys for Plaintiff Seun Ogunkoya*

20