UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
SEUN OGUNKOYA,

                    Plaintiff,                  **REPORT AND RECOMMENDATION**

          -against-                     **15 CV 6119 (KAM)(LB)**

COUNTY OF MONROE; SANDRA DOORLEY,
individually and as District Attorney of Monroe County;
MARK MONAGHAN, individually and as a Bureau
Chief of Monroe County; JAMES EGAN, individually
and as an Assistant District Attorney of Monroe County;
ALBERT DRAKE III, individually and as an investigator
with the New York State Police; DARIUSZ ZYSK,
individually and as a trooper with the New York State
Police; MARK E. EIFERT, individually and as an
investigator with the New York State Police; PETER
SCHRAGE, individually and as a trooper with the
New York State Police; and JOHN DOE AND
RICHARD ROE (names and number of whom are
unknown at present), and other unidentified members
of the New York State Police,

                    Defendants.
-------------------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff Seun Ogunkoya ("Ogunkoya") brings this action pursuant to 42 U.S.C. § 1983

alleging that defendants New York State Police ("NYSP") Troopers Albert Drake, Mark E. Eifert,

Peter Schrage, and Dariusz Zysk (collectively "NYSP defendants"), as well as defendants County

of Monroe, District Attorney Sandra Doorley, Bureau Chief Mark Monaghan, and Assistant

District Attorney James Egan (collectively "Monroe defendants") violated his rights under the

Fourth and Fourteenth Amendments of the United States Constitution. For the following reasons,

it is respectfully recommended that the NYSP and Monroe defendants' motions to dismiss should

be granted in part and denied in part.

# FACTUAL AND PROCEDURAL HISTORY

I.   *Factual History*

    A. *New York State Police Investigation*

On April 26, 2014, $28,000 worth of gift cards were fraudulently purchased at three different Home Depot stores in Monroe County, New York. Second Amended Complaint ("SAC"), ECF No. 43, ¶ 19. The gift cards were purchased on the same day in stores located in the towns of Greece, Henrietta, and Irondequoit. Id. Home Depot reported the fraudulent gift card purchases to the NYSP on April 30, 2014. Id. ¶ 20. The NYSP, led by Investigator Mark Eifert ("Eifert"), initiated a criminal investigation. Id.

Through his investigation, Eifert determined that Ogunkoya "had used his personal credit card to make small purchases at the Home Depots in Greece and Henrietta at or around the time that the gift cards were purchased." Id. ¶ 21. Eifert also reviewed surveillance tapes showing Ogunkoya's purchases.[1] Id. On January 20, 2015, Eifert prepared six felony complaints charging Ogunkoya with Identify Theft in the First Degree and Grand Larceny in the Third Degree.[2] Id. ¶ 22. Eifert's complaints alleged that Ogunkoya had "used a credit card in the name of David N. Bolak to obtain goods in Irondequoit, New York; a credit card in the name of Daryl P. Pietrocarlo to obtain goods in Greece, New York; and a credit card in the name of Merton A. Fernaays to obtain goods in Henrietta, New York." Id.; see also Criminal Complaints.

---

[1] Plaintiff alleges that the surveillance tapes "show[] that a person other than [Lieutenant] Ogunkoya had purchased the gift cards." Id. ¶ 21.

[2] Plaintiff alleges that Eifert prepared the six criminal complaints on January 20, 2015; however, the criminal complaints attached to the SAC are dated January 26, 2015. Compare id. ¶ 22 with Criminal Complaints, attached to SAC as Exhibit 1, ECF No. 44.

### B. Ogunkoya's February 20, 2015 Arrest

On the morning of February 20, 2015, NYSP Investigator Albert Drake, III ("Drake") and NYSP Trooper Dariusz Zysk ("Zysk") went to Ogunkoya's apartment in Brooklyn, New York. <u>Id.</u> ¶ 27. Drake and Zysk knocked on Ogunkoya's apartment door, displayed their identification, and explained to Ogunkoya that were trying to gather "information on some identity thefts." <u>Id.</u> Drake and Zysk did not have an arrest warrant and did not inform Ogunkoya that he was under arrest. <u>Id.</u> Ogunkoya allowed them into his apartment. <u>Id.</u>

Once in the apartment, Drake and Zysk followed Ogunkoya closely. <u>Id.</u> ¶ 28. Ogunkoya asked if he was under arrest. <u>Id.</u> Drake and Zysk told him he was under arrest, placed him in handcuffs, and transported him to a Brooklyn police station. <u>Id.</u> ¶¶ 28-32. The same day, Drake, along with several unidentified NYSP Troopers, transported Ogunkoya in handcuffs from Brooklyn to Henrietta. <u>Id.</u> ¶¶ 35-37. The trip lasted more than ten hours. <u>Id.</u>

### C. Ogunkoya's Criminal Prosecution

On the night of February 20, 2015, NYSP Trooper Peter Schrage ("Schrage") filed Eifert's six felony complaints against Ogunkoya with the Town Court in Henrietta. <u>Id.</u> ¶¶ 37-38. The Town Court Judge arraigned Ogunokya "on the two complaints that charged conduct that occurred in the town of Henrietta" but not on the "four complaints that charged conduct in Greece and Irondequoit[.]" <u>Id.</u> ¶ 39. The Judge directed Schrage to have Ogunkoya arraigned on the remaining four complaints by February 23, 2015. <u>Id.</u> ¶ 41. Ogunkoya was never arraigned on the other four complaints. <u>Id.</u> ¶ 43.

On February 23, 2015, a bail hearing was held in the Henrietta Town Court. <u>Id.</u> ¶ 47. At the bail hearing, Ogunkoya's counsel requested that he be arraigned on the four outstanding criminal complaints "in time for a [] bail application to be made on all charges so that [Ogunkoya]

could travel to New York City in time for the bar examination."[3] Id. ¶ 48. Notwithstanding the fact that Ogunkoya had only been arraigned on two of the six criminal complaints, Mark Monaghan ("Monaghan"), the Chief of the Economic Crimes Bureau of Monroe County, and Assistant District Attorney James Egan ("Egan") "argued for $100,000 cash/$300,000 bond, based on the combined allegations of the six felony complaints." Id. ¶ 49. The Town Judge set bail at $100,000 cash/$300,000 bond. Id. ¶ 51.

On February 25, 2015, Ogunkoya attempted to arrange bail; however, the bail bondsman "expressed reluctance at posting a bond" due to the four outstanding criminal complaints that Ogunkoya had not been arraigned on. Id. ¶ 54. As a result, Ogunkoya's counsel contacted ADA Egan to schedule Ogunkoya's arraignment on the additional complaints. Id. ¶ 55. In response, Egan stated in an email:

> There is no need to ever arraign him on the charges in local court. He was arrested on the Henrietta charges and received his prompt arraignment on them as required by the [Criminal Procedure Law]. The purpose of CPL 140.20 is to ensure a person who is arrested gets a prompt arraignment and doesn't have to sit in jail waiting for bail to be set. The other charges are essentially "sealed" charges since he has never been arrested or arraigned on them. In any event, they were all referred to the grand jury and they will be presented together. This is done frequently in cases involving charges in multiple jurisdictions.

Id. ¶ 56.

Ogunkoya's counsel filed a writ seeking to have Ogunkoya promptly arraigned on the four outstanding complaints. Id. ¶ 57. Counsel attached an affirmation to the writ application which stated that "Ogunkoya was prepared to post a $300,000 bond but that the bail bondsman refused to post the bond solely because of the unarraigned charges." Id. On March 2, 2017, out of concern that Ogunkoya would be re-arrested on the unarraigned charges, the bondsman declined to post

---

[3] Ogunkoya, a foreign trained lawyer, "earned an LLM at the University of Houston[] and was scheduled to take the New York Bar Examination on February 24 and 25, 2015." Id. ¶ 17.

bail. Id. ¶ 58.  Ogunkoya's relatives followed up with the bondsman on March 17, 2015. Id. ¶ 60.

On March 20, 2015, 28 days after he was arrested, Ogunkoya was released on bond.[4] Id. ¶ 62.

On May 15, 2015, a Grand Jury in Monroe County indicted Ogunkoya on three counts of

Identity Theft in the First Degree stemming from the Home Depot gift card incidents in the towns

of Greece, Henrietta, and Irondequoit.[5] Id. ¶¶ 63-64.  At trial, a jury acquitted Ogunkoya on all

charges.[6] Id. ¶ 66.

## II.    Procedural History

Ogunkoya filed his *pro se* Complaint on October 26, 2015. ECF No. 1.  On December 31,

2015, the Monroe defendants answered the Complaint and on January 13, 2016, the NYSP

defendants requested a pre-motion conference in advance of moving to dismiss the Complaint.

ECF Nos. 14, 15.  On February 1, 2016, the Honorable Kiyo A. Matsumoto granted plaintiff an

opportunity to amend his Complaint and set a briefing schedule for the NYSP defendants' motion

to dismiss.  Minute Entry, dated Feb. 1, 2016.  On February 16, 2016, plaintiff filed an Amended

Complaint. ECF No. 19.  The Monroe defendants answered the Amended Complaint. ECF No. 20.

On April 15, 2016, the NYSP defendants filed their fully briefed motion to dismiss the Amended

Complaint. ECF Nos. 28-32.

On July 12, 2016, *pro bono* counsel filed a notice of appearance on plaintiff's behalf. ECF

No. 41.  On August 16, 2016, plaintiff's *pro bono* counsel filed a Second Amended Complaint on

plaintiff's behalf. ECF No. 43.  In light of the Second Amended Complaint, the NYSP defendants

---

[4] The SAC does not state how Ogunkoya secured his bond.
[5] Although plaintiff was ultimately indicted on several charges related to the purchase of Home Depot gift cards, it is unclear whether plaintiff was indicted on the same charges that he was arraigned on. See NYSP Defendants' Memorandum of Law in Support of Motion Dismiss ("NYSP Memorandum"), ECF No. 56, at 7 n.7 (stating that plaintiff was indicted "on the charges"); Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Second Amended Complaint ("Plaintiff's Opposition"), ECF No, 60, at 11 n.11 (explaining that the State defendants "misstate the allegations" as the "grand jury indictment did not include any counts of larceny").
[6] The SAC does not state the date(s) of plaintiff's trial nor the date he was acquitted.

withdrew their motion to dismiss plaintiff's Amended Complaint without prejudice. ECF No. 27. Subsequently, the Monroe and NYSP defendants both moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that plaintiff's SAC fails to state a claim that defendants violated his Fourth or Fourteenth Amendment rights. ECF Nos. 55, 58. Plaintiff opposed defendants' motions and defendants replied. ECF Nos 57, 59, 60. The fully briefed motions were referred to me for a Report and Recommendation.

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6) (permitting dismissal of a complaint that does not state a claim upon which relief can be granted). To survive a motion to dismiss, "a complaint must plead specific facts sufficient to support a plausible inference that the defendant is liable for the misconduct alleged. While 'the plausibility standard is not akin to a probability requirement, it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Doe v. Columbia Univ., 831 F.3d 46, 54 (2d Cir. 2016) (internal citations and alterations omitted) (quoting Iqbal, 556 U.S. at 678).

The facts alleged in the complaint are assumed to be true for the purpose of deciding this motion and are construed in the light most favorable to plaintiff. See Goldstein v. Pataki, 516 F. 3d 50, 56 (2d Cir. 2008). As a general rule, courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." Nakahata v. N.Y.-Presbyterian

Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citation omitted). Moreover, courts "do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n. 2 (2d Cir. 2016) (internal quotation marks omitted)). However, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss" or a motion for judgment on the pleadings, "including arrest reports, criminal complaints, indictments, and criminal disposition data." Gomez v. City of N.Y., No. 16 CV 1274 (NGG), 2017 WL 1034690, at *1 n. 1 (E.D.N.Y. Mar. 16, 2017) (quoting Fairlev v. Collins, No. 09 CV 6894 (PGG), 2011 WL 1002422, at *1 (S.D.N.Y. Mar. 15, 2011) (collecting cases)).

Here, the Court takes judicial notice of the documents attached to plaintiff's complaint to "'establish the fact of such litigation and related filings,'" not for the truth of the matters asserted therein. Johnson v. Levy, 812 F. Supp. 2d. 167, 176-77 (E.D.N.Y. 2011) (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)). However, as defendants' motions rely on matters outside the pleadings, the Court should not consider these materials at this time and should decline to convert the parties' motions into summary judgment motions "because the available evidence, standing alone, does not establish a comprehensive record." Gomez, 2017 WL 1034690, at *4.

## DISCUSSION

I.    *False Arrest and False Imprisonment*

Plaintiff asserts claims for false arrest and false imprisonment against the NYSP and Monroe defendants based on his warrantless arrest. SAC ¶¶ 70-75.

"[A] § 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006). "In analyzing a section 1983 false arrest claim, federal courts look to the law of the state in which the arrest occurred." Hoyos v. City of New York, 999 F. Supp. 2d 375, 385 (E.D.N.Y. 2013) (citing Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013)). To prevail on a false arrest claim under New York law, "a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."[7] Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotations omitted).

"Furthermore, when an arrest is made without a warrant, the officer has acted outside the scope of the legal process and therefore a rebuttable presumption arises that such an arrest is unlawful." Carillos v. Incorporated Vill. of Hempstead, 87 F. Supp. 3d 357, 375 (E.D.N.Y. 2015) (internal citations and quotation omitted). To overcome the rebuttable presumption that such an arrest is unlawful, defendants must establish that there was probable cause for the arrest. See Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (quoting Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest'".) Probable cause is established where "the officers have 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been

---

[7] Plaintiff asserts claims for false arrest and false imprisonment. SAC ¶¶ 70-75. However, under New York law, false imprisonment and false arrest claims are synonymous. Gomez, 2017 WL 1034690, at *2 n. 2 (E.D.N.Y. Mar. 16, 2017) (citing Jenkins v. City of New York, 478 F.3d 76, 88 n.10 (2d Cir. 2007); Carillos v. Incorporated Vill. of Hempstead, 87 F. Supp. 3d 357, 375 (E.D.N.Y. 2015) (citing Kilburn v. Vill. Of Saranac Lake, 413 Fed. Appx. 362, 363 (2d Cir. 2011)).

or is being committed by the person to be arrested.'" Finigan v. Marshall, 574 F.3d 57, 62 (2d Cir.

2009) (quoting Zellner v. Summerlin, 494 F.2d 344, 368 (2d Cir. 2007)).

   *A. NYSP Defendants*

   *1. No Probable Cause for Ogunkoya's Arrest*

The NYSP defendants assert that there was probable cause for plaintiff's arrest. NYSP

Memorandum at 6. Specifically, the NYSP defendants rely on the fact that plaintiff was present

at "three different Home Depots, in the vicinities of the cashiers, at the same that the stolen/cloned

credit cards were being used".[8] Id. However, as set forth in the SAC, plaintiff alleges that the

officers lacked probable cause to arrest him for Identity Theft[9] or Grand Larceny.[10] Ogunkoya's

presence in Home Depot stores where the fraudulent purchases were made is certainly relevant to

Ogunkoya's claim for false arrest; however, on the instant record, defendants essentially ask this

Court to find that probable cause existed to arrest Ogunkoya for Identity Theft and/or Grand

Larceny simply because he was in Home Depot stores where credit card fraud and/or identity theft

occurred. On the instant record, defendants fail to establish probable cause for plaintiff's arrest.

The NYSP defendants argue that "there was probable cause to arrest plaintiff for

participating in a theft at a bare minimum." NYSP Memorandum at 7. The Supreme Court has

---

[8] NYSP defendants also assert, *inter alia*, that surveillance video shows plaintiff entering the Home Depots "with the individual who purchased the gift cards" and that plaintiff's wife identified plaintiff in the videos. NYSP Memorandum at 6-7; see also NYSP Defendants' Reply Memorandum of Law in Support of Motion to Dismiss ("NYSP Reply"), ECF No. 57, at 2 (outlining additional information known to the officers, including that "the stolen gift cards were [] used to purchase goods . . . not far from where plaintiff resides"). This information is not properly before the Court on the instant motion and should not be considered. Even if the Court were to consider such information, this would still be insufficient to support a finding of probable cause.

[9] "A person is guilty of identity theft in the first degree when he or she knowingly and with intent to defraud assumes the identity of another person . . . by using personal identifying information of that person, and thereby: 1. Obtains goods, money, property or services or uses credit in the name of such another person . . . ." N.Y. Penal Law § 190.80; see also SAC ¶ 22 (alleging that each criminal complaint charged plaintiff with "a count of identity theft in the first degree"); Criminal Complaints (charging plaintiff with Identity Theft in the First Degree).

[10] "A person is guilty of grand larceny in the third degree when he or she steals property and: 1. when the value of the property exceeds three thousand dollars, . . . ." N.Y. Penal Law § 155.35; see also SAC ¶ 22 (alleging that each criminal complaint charged plaintiff with "a count of grand larceny in the third degree"); Criminal Complaints (charging plaintiff with Grand Larceny in the Third Degree).

made clear that the arrest charge "actually invoked by the arresting officer" does not determine the ultimate issue of probable cause. Devenpeck v. Alford, 543 U.S. 146, 153 (2014). Rather, the question for the Court is whether, at the time of the arrest, there was "probable cause to arrest [p]laintiff[ ] for any single offense." Marcavage v. City of New York, 689 F.3d 98, 109-10 (2d Cir. 2012); see also Ackerson v. City of White Plains, 702 F.3d 15, 19-20 (2d Cir. 2012), as amended (Dec. 4, 2012). Here, although the NYSP defendants assert that Ogunkoya "participat[ed] in a theft[,]" they fail to articulate any crime for which probable cause existed to arrest plaintiff. NYSP Memorandum at 7. Further, the NYSP defendants fail to present any argument as to why the NYSP troopers found it necessary to arrest plaintiff in his home without a warrant absent exigent circumstances.[11]

Notwithstanding the lack of any substantive analysis by the NYSP defendants, the Court considers whether probable cause existed to arrest Ogunkoya under a theory of accomplice liability. N.Y. Penal Law § 20.00 ("When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."). Under New York law, in order to be held liable as an accomplice, there must be "adequate proof of shared intent with the principal

---

[11] The Court recognizes that there are limited facts before the Court, nonetheless, the Court is extremely troubled by the warrantless arrest of plaintiff in his home as "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Cruz v. City of New Rochelle, No. 13 Civ. 7432 (LMS), 2017 WL 1402122, at *11 (S.D.N.Y. Apr. 3, 2017) (quoting United States v. Simmons, 661 F.3d 151, 157 (2d Cir. 2011) (internal quotation marks and citation omitted)). Ogunkoya may have consented to the officers' initial presence in his home; however, it appears that the NYSP defendants went to his home with the clear intent to arrest Ogunkoya without a warrant. See United States v. Allen, 813 F.3d 76, 85 (2d Cir. 2016) ("[L]aw enforcement may not cause a suspect to open the door of the home to effect a warrantless arrest of a suspect in his home in the absence of exigent circumstances."). The NYSP defendants' failure to procure an arrest warrant raises serious constitutional concerns. Plaintiff was arrested almost one month after Eifert drafted the criminal complaints. Further, Eifert drafted the complaints almost ten months after the fraudulent gift cards were purchased. No exigent circumstances existed. The instant motions do nothing to allay the Court's concerns that defendants arrested plaintiff in his home without a warrant, transported plaintiff hundreds of miles away, and held plaintiff for 28 days because he was in Home Depot stores at the time credit card fraud and/or identity theft occurred.

actor." People v. McLean, 485 N.Y.S.2d 1019, aff'd, 65 N.Y.2d 758 (1985). "The 'shared intent' test 'merely establishes that acts undertaken in relevant innocence and without a conscious design to advance the principal's crime will not support [] accomplice liability.'" Moore v. Scully, 956 F. Supp. 1139, 1146 (S.D.N.Y. 1997) (quoting People v. Kaplan, 76 N.Y.2d 140, 145 (1990)). "Thus, 'accomplice liability requires, at a minimum, awareness of the proscribed conduct and some overt act in furtherance of such.'" Simon v. City of N.Y., No. 14 Civ. 8391 (JMF), 2017 WL 57860, at *3 (S.D.N.Y. Jan. 5, 2017) (quoting People v. Carpenter, 30 N.Y.S.3d 299, 303 (App. Div. 2d Dep't 2016)). Here, no facts are presented to support probable cause for plaintiff's arrest based on accomplice liability. Though the officers possessed evidence showing Ogunkoya was present at the stores where the fraudulent gift card purchases were made, the officers had no individualized knowledge or reason to believe that Ogunkoya possessed the intent to participate in the purchase of the fraudulent gift cards. See e.g. id. (denying summary judgment where the evidence failed to show plaintiffs "shared an intent" to commit a crime); Dinler v. City of N.Y., No. 04 Civ. 7921 (RJS) (JCF), 2012 WL 4513352, at *11 (S.D.N.Y. Sept. 30, 2012) ("mere proximity to illegal conduct does not establish probable cause with respect to an individual.").

The NYSP defendants also assert that probable cause existed as each officer could rely on the observations and investigations of the other officers. NYSP Memorandum at 8-9. "The existence of probable cause need not be assessed on the basis of the knowledge of a single officer." Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007). ("[A]n arrest ... is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.") (citing United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001)). While defendants are correct that officers can

rely on facts known to other officers, this misses the point. As described supra, at the time of plaintiff's arrest, no NYSP defendant had sufficient information to justify probable cause to arrest plaintiff. Further, on the instant record, the Court cannot find that Drake, Schrage, and Zysk acted reasonably in relying on the information provided by Eifert to arrest plaintiff. See Johnson v. City of N.Y., No. 15 CV 1625 (SMG), 2017 WL 1476139, at *5 (E.D.N.Y. Apr. 24, 2017) ("[W]here, as here, an officer is acting based upon the knowledge of a fellow officer, the proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed or the vouching officer acted reasonably." (internal quotations and citations omitted)). Simply put, the NYSP defendants cannot rely on the collective knowledge doctrine to establish probable cause for plaintiff's arrest on the facts presented.

Accordingly, the NYSP defendants' motion to dismiss plaintiff's false arrest and false imprisonment claims should be denied.

2. *Qualified Immunity*

In the alternative, the NYSP defendants argue that they are entitled to qualified immunity. NYSP Memorandum at 7. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, – U.S. –, 137 S.Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (*per curiam*) (internal quotation marks omitted). An official is entitled to qualified immunity where the arrest and prosecution are supported by "[a]rguable probable cause[, which] exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted); see also Sanseviro v. N.Y., No. 16 CV 454, 2017 WL 1241934, at *2 (2d Cir. Apr. 4, 2017). "Put another way, an

arresting officer will find protection under the defense of qualified immunity unless 'no reasonably competent officer' could have concluded, based on the facts known at the time of arrest, that probable cause existed." Figueroa v. Mazza, 825 F.3d 89, 100 (2d Cir. 2016) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

NYSP defendants assert that "[g]iven the evidence that plaintiff was present at three different locations where the same crimes occurred, and at the exact same times they occurred, it was objectively reasonable for NYSP Defendants to believe plaintiff committed the crimes." NYSP Memorandum at 8. However, this position is belied by the fact that the officers were aware that another individual purchased the gift cards. Id. at 6. Moreover, the record is clear that plaintiff used his own credit card issued in his own name in two of the stores on the date of the incident. A reasonable officer would question why plaintiff would use his own valid credit card if he was committing fraud and identity theft. On the record before the Court, whereas it was reasonable for an officer to believe that Ogunkoya had information regarding the alleged crimes given his presence at the three stores at the time of the crimes, it was not reasonable for an officer to have believed, without more, that Ogunkoya could be arrested for any crime. Furthermore, had an officer believed that there was sufficient information to establish that plaintiff had committed any crime, the officer should have obtained a warrant for plaintiff's arrest. There were no exigent circumstances presented for the NYSP defendants to arrest plaintiff without a warrant. On the instant record, there was no arguable probable cause for plaintiff's arrest. Accordingly, the NYSP defendants' motion to dismiss based on qualified immunity should be denied.

### B. Monroe Defendants

Plaintiff also asserts a claim for false arrest against Monroe defendants Doorley, Egan, and Monaghan.[12] SAC ¶¶ 70-75. Notwithstanding the fact that the NYSP troopers lacked probable cause to arrest plaintiff, the Monroe defendants' motion to dismiss plaintiff's false arrest claim should be granted.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citation and internal quotation marks omitted)). Here, plaintiff fails to allege that the individual Monroe defendants were personally involved in "plaintiff's arrest nor has he included in his pleadings any facts that would give[] rise to an inference of direct involvement." Rodriguez v. City of New York, 649 F. Supp. 2d 301, 305 (S.D.N.Y. 2009) (dismissing false arrest arrest claims against a District Attorney and Assistant District Attorneys for lack of personal involvement); see also Tabaei v. N.Y. City Health & Hosps. Corp., No. 11 Civ. 2013 (JSR), 2011 WL 6778500, at *4 (S.D.N.Y. Dec. 21, 2011) (dismissing plaintiff's false arrest claims against ADA defendants as "plaintiff pleads no facts alleging the ADA Defendants were personally involved in her arrest and, therefore, fails to state a plausible claim"). The individual Monroe defendants did not direct any officer to arrest plaintiff. As such, the Monroe defendants' motion to dismiss plaintiff's false arrest claim should be granted.

---

[12] Plaintiff initially brought claims against the Monroe defendants in their official and individual capacities. However, "the Eleventh Amendment to the United States Constitution shields [the Monroe defendants] from liability" in their official capacities. Carbajal v. Cty. of Nassau, 271 F. Supp. 2d 415, 420 (E.D.N.Y. 2003). Ogunkoya concedes that his claims against the Monroe defendants are only in their individual capacities. Plaintiff's Opposition at 10 n. 3.

## II.     *Malicious Prosecution*

To pursue a claim for malicious prosecution, plaintiff must establish "the elements of a malicious prosecution claim under state law, <u>Manganiello v. City of New York</u>, 612 F.3d 149, 160-61 (2d Cir. 2010), as well as a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights," <u>Rohman v. N.Y.C. Transit Auth.</u>, 215 F.3d 208, 215 (2d Cir. 2000). "Under New York law, a claim for malicious prosecution requires: '(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceedings; and (4) actual malice as a motivation for defendant's action" <u>Hoyos</u>, 999 F. Supp. 2d at 385 (quoting <u>Manganiello</u>, 612 F.2d at 161).

"The existence of probable cause is a complete defense to a claim of malicious prosecution in New York . . . ." <u>Manganiello</u>, 612 F.3d at 161-62. Importantly, "the relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced." <u>Davis v. City of New York</u>, 373 F. Supp. 2d 322, 333 (S.D.N.Y. 2005).

### A.  *NYSP Defendants*

Although not addressed by the NYSP defendants in their motion to dismiss, it is clear that plaintiff asserts a claim for malicious prosecution against the NYSP defendants. SAC ¶ 70 ("Defendants . . . criminally prosecuted [plaintiff] without probable cause.").[13]

"Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments." <u>Cameron v. City of New York</u>, 598 F.3d 50, 63 (2d Cir. 2010); <u>see</u> <u>also</u>

---

[13] The First Cause of Action alleges a Fourth Amendment violation against <u>all</u> defendants for plaintiff's criminal prosecution, SAC ¶ 70, however, plaintiff's Third Cause of Action clearly asserts a claim for malicious prosecution against the Monroe defendants, <u>Id.</u> ¶ 77.

Frederique v. Cty. of Nassau, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) (explaining that "plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints."). Here, plaintiff fails to allege any role that defendants Drake and Zysk played in the initiation of plaintiff's criminal prosecution. See generally SAC. Accordingly, any malicious prosecution claim against defendants Drake and Zysk should be dismissed for lack of personal involvement in the initiation of plaintiff's prosecution.

However, the complaint specifically alleges that Eifert signed the criminal complaints, SAC ¶¶ 22-23, and that Schrage "filed all six complaints" with the Court and "attempted to have Lt. Ogunkoya arraigned", SAC ¶¶ 37-38. As the Court finds no probable cause for plaintiff's arrest or prosecution,[14] defendants' motion to dismiss these claims should be denied and plaintiff's malicious prosecution claim against defendants Eifert and Schrage should proceed.

### B. Monroe defendants

Plaintiff also asserts a claim for malicious prosecution against the individual Monroe defendants Doorley, Egan, and Monaghan. SAC ¶¶ 77-81. However, defendants Doorley, Egan, and Monaghan are entitled to absolute immunity for plaintiff's prosecution.

---

[14] The Court cannot rely on plaintiff's indictment to support a finding of probable cause for plaintiff's prosecution based on the instant record. Although a grand jury indictment creates a rebuttable presumption of probable cause, Peterson v. Regina, 935 F. Supp. 2d 628, 642 (S.D.N.Y. 2013) (collecting cases), "[p]laintiff is required to rebut that presumption and must establish that the alleged circumstances 'warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially.'" Longo v. Ortiz, No. 15 Civ. 7716 (VEC), 2016 WL 5376212, at *3 (S.D.N.Y. Sept. 26, 2016) (quoting Rothstein v. Carriere, 373 F.3d 275, 283-84 (2d Cir. 2004) (additional quotations omitted)). The Second Circuit has held that "a finding of probable cause on one charge does not foreclose a malicious prosecution claim based on charges requiring different, and more culpable, behavior." Id. (citing Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991); Janetka v. Dabe, 892 F.2d 187 (2d Cir. 1989)); see also DiBlasio v. City of N.Y., 102 F.3d 654, 658 (2d Cir. 1996) (where the Second Circuit expressed concern regarding the "possibility of a prosecutor securing an indictment for an easily provable minor offense and adding to it more serious charges with the hope that proof of probable cause on the lesser charge would insulate the prosecutor from liability for malicious prosecution on the unproved serious ones")). Here, as explained supra n.5, it is unclear on the facts presented whether plaintiff was indicted on the same charges he was arraigned on. Moreover, neither party substantively addresses the impact of the indictment on plaintiff's claims. This issue cannot be decided on the instant motions.

"Absolute immunity bars a civil suit against a prosecutor for conduct that is 'intimately associated with the judicial phase of the criminal process.'" <u>Giraldo v. Kessler</u>, 694 F.3d 161, 165 (2d Cir. 2012) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976)). "To establish absolute prosecutorial immunity, prosecutors have the burden of proving that 'they were functioning as an 'advocates' when they engaged in the challenged conduct.'" <u>Sanseviro v. N.Y.</u>, 158 F. Supp. 3d 131, 139 (E.D.N.Y. 2016), <u>aff'd</u>, No. 16-454, 2017 WL 1241934 (2d Cir. Apr. 4, 2017) (quoting <u>Warney v. Monroe Cnty.</u>, 587 F.3d 113, 121 (2d Cir. 2009)). Prosecutors are absolutely immune when they undertake actions prior to or during trial that are "intimately associated with the judicial phase of the criminal process." <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 343 (2009) (citation omitted); <u>see</u> <u>also</u> <u>Burns v. Reed</u>, 500 U.S. 478, 486 (1991).

In determining absolute immunity, courts must "take a 'functional approach, examining 'the nature of the function performed . . . .'" <u>Simon v. City of New York</u>, 727 F.3d 167, 171 (2d Cir. 2013) (quoting <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269 (1993)). "The relevant question, therefore, is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor. <u>Giraldo</u>, 694 F.3d at 166 (citing <u>Burns</u>, 500 U.S. 489-90). If so, absolute immunity applies, "even in the face of a complaint's allegations of malicious or corrupt intent behind the acts." <u>Id.</u>

Here, defendants Doorley, Egan, and Monaghan's decisions to charge and prosecute Ogunkoya are entitled to absolute immunity. <u>See</u> <u>Sanseviro</u>, 158 F.3d at 139 (finding absolute immunity where prosecutors initiated and pursued criminal charges); <u>see</u> <u>also</u> <u>Peay v. Ajello</u>, 470 F.3d 65, 67 (2d Cir. 2006) ("Plaintiff's claims against [the prosecutor] which encompass activities involving the initiation and pursuit of prosecution, are foreclosed by absolute prosecutorial

immunity . . . .").  Accordingly, the individual Monroe defendants' motion to dismiss plaintiff's malicious prosecution claim should be granted.[15]

### III.     Failure to Arraign

Plaintiff claims that defendants violated his rights as they failed to arraign him "on four of the six counts that were the basis for his arrest." Plaintiff's Opposition at 13.  Plaintiff alleges that, as a result of the defendants' failure to arraign him on the additional charges, he spent an additional "28 days in prison, and during those 28 days, [he] lost his job, was unable to take his bar examination and suffered additional harms and injuries." SAC ¶ 1.

"A State has no legitimate interest in detaining for extended periods individuals who have been arrested without probable cause." Cty. of Riverside v. McLaughlin, 500 U.S. 44, 55 (1991).  It is clearly established that the Fourth Amendment demands that "[a] person[] arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause." Id. at 56; see also Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) ("In the context of pretrial detention, the Supreme Court has held that, when there has been a warrantless arrest, the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention.") "In sum '[w]hat is constitutionally required is that, except in extraordinary circumstances, the arrestee be given a hearing into probable cause for the arrest within 48 hours.'" Case v. City of New York, No. 14 Civ. 9148 (AT), 2017 WL 571530, at *7 (S.D.N.Y. Feb. 10, 2017) (quoting Bryant, 404 F.3d at 135–36).

---

[15] To the extent a failure to train and/or supervise claim is alleged against District Attorney Doorley regarding Ogunkoya's prosecution, such claim fails as Doorley is entitled to absolute immunity for tasks "directly connected with [a] prosecutor's basic trial advocacy duties."Van de Kamp, 555 U.S. at 344 (prosecutors are entitled to immunity for "administrative obligation[s] ... that [are] directly connected with the conduct of a trial ... unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like."). Further, even if Doorley was not entitled to absolute immunity, plaintiff's complaint fails to "establish [Doorley's] personal involvement in the alleged constitutional violation." Mitchell v. Siermsa, No. 13 CV 730, 2014 WL 575539, at *2 (W.D.N.Y. Feb. 10, 2014) (dismissing DA Doorley as a defendant for lack of personal involvement).

"A plaintiff may have an excessive detention claim if [he] can show that [his] probable cause determination was 'delayed unreasonably'[.]" Id. (quoting McLaughlin, 500 U.S. at 56-57.) Courts routinely dismiss claims regarding pre-arraignment detentions where arrestees are detained for less than 48 hours prior to arraignment. See e.g. Horvath v. City of New York, No. 12 CV 6005 (RJD), 2015 WL 1757759, at *5 (E.D.N.Y. Apr. 17, 2015) (dismissing plaintiff's claim on summary judgment where plaintiff "made no showing that [a 24 hour delay] was unreasonable"); Simmons v. Kelly, No. 06 Civ. 6183 (RJS), 2009 WL 857410, at *6 (S.D.N.Y. Mar. 31, 2009) (dismissing plaintiff's claim on a motion to dismiss where the "prearraignment detention was approximately thirty-six hours - safely within the forty-eight hour time limit"). However, "where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes." McLaughlin, 500 U.S. 57. "In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance."[16] Id.

Here, plaintiff was brought before Henrietta Town Court Judge James Beikirch the day after defendants arrested him without a warrant. The Henrietta Judge specifically declined to arraign plaintiff on the charges from Greece and Irondequoit and directed defendants to have plaintiff arraigned on those charges immediately. However, defendants not only failed to have plaintiff arraigned on these other charges within 48 hours, defendants never presented plaintiff to

---

[16] The "Supreme Court [has] cautioned that, when reviewing claims of unreasonable detention, courts 'must allow for a substantial degree of flexibility' and be mindful of 'the unavoidable delays . . . and other practical realities'" that prosecutors face. Bernshtein v. City of New York, No. 08 Civ. 2906 (AKH), 2010 WL 2541617, at *1 (quoting McLaughlin, 500 U.S. at 56-57.). "Examples of unreasonable delay are: (1) 'delays for the purpose of gathering additional evidence to justify the arrest,' (2) 'a delay motivated by ill will against the arrested individual,' and, (3) 'delay for delay's sake.'" Pesola v. City of N.Y., No. 15 CV 1917 (PKC), 2016 WL 1267797, at *9 (S.D.N.Y. Mar. 30, 2016) (quoting McLaughlin, 500 U.S. at 56.).

a judge on these charges. Although defendants argue that plaintiff was properly arraigned,[17] the Court finds that such "[l]egal process did not expunge [Ogunkoya's] Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention – probable cause to believe he committed a crime." Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 919–20, 197 L. Ed. 2d 312 (2017). "[P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case . . . [and] it can also occur when legal process itself goes wrong." Id. at 918-19 (Section 1983 claim could proceed under the Fourth Amendment where, even though a judge made a probable cause determination on the day of his arrest, plaintiff was held in custody for 48 days "based entirely on made-up evidence"). On the instant record, the Court finds that the legal process afforded to Ogunkoya was constitutionally deficient. Accordingly, the defendants bear the burden to demonstrate the existence of a bona fide emergency or other extraordinary circumstance for why plaintiff was not arraigned on the Greece and Irondequoit charges. At this stage, and on the instant record, defendants fail to meet their burden. See e.g. Pesola, 2016 WL 1267797, at *9 (noting that "there may be some set of facts brought out in discovery that . . . makes [the] delay appear reasonable).

Although plaintiff has specifically pled a claim regarding his delayed arraignment, the Monroe and NYSP defendants argue that they are entitled to immunity. The individual Monroe defendants assert that they are entitled to absolute immunity, Monroe Memorandum at 13-14,

---

[17] Defendants argue that plaintiff was properly arraigned on the two Henrietta complaints and "was never arraigned on [the Greece and Irondequoit] felony complaints because no criminal proceedings were initiated on those felony complaints." County Defendants' Reply Memorandum ("Monroe Reply"), ECF No. 59, at 7.

while the NYSP defendants assert that they are entitled to qualified immunity, NYSP Memorandum at 12-13.[18]

The decision to arraign on certain charges and not others is clearly within a prosecutor's discretion. See e.g. Buckley, 509 U.S. at 274 n.5 (explaining that absolute immunity shields a "prosecutor's decision to bring an indictment, whether he has probable cause or not"); Jackson v. Seewald, No. 11 Civ. 5826 (LAK) (JCF), 2013 WL 149341, at *7 (S.D.N.Y. Jan. 14, 2013) (finding absolute immunity "to the extent that plaintiff's claims are based upon the ADA defendants' initiation of the prosecution against him"); Houston v. Nassau Cty., No. 08 CV 197 (JFB), 2011 WL 477732, at *3 (E.D.N.Y. Feb. 2, 2011) ("[B]oth the Supreme Court and Second Circuit have made clear that the decision regarding whether or not to initiate prosecution is a quintessential prosecutorial function that is entitled to absolute immunity."). However, plaintiff argues that defendants are not entitled to absolute immunity as "arranging for arraignment is an administrative and not advocating function". Plaintiff's Opposition at 13. This Court agrees. A prosecutor clearly exercises discretion regarding what charges to bring against a defendant. However, where an Assistant District Attorney acts "in an investigative or administrative role, rather than as an advocate, by unreasonably delaying [an] arraignment" he is not entitled to absolute immunity. Jones v. King, No. 10 Civ. 897 (PKC), 2011 WL 4484360, at *4 (analyzing whether defendants were entitled to qualified immunity on plaintiff's arraignment claim). On the instant record, defendants Egan and Monaghan are not entitled to absolute immunity for their

---

[18] The NYSP defendants also argue that they had "no personal involvement in the alleged delay in plaintiff being released on bond." NYSP Memorandum at 12-13. As alleged by plaintiff, Schrage brought plaintiff to his initial arraignment and was specifically directed by the Henrietta Judge to have plaintiff arraigned on the four additional charges drafted by Eifert. Accordingly, and for the same reasons that plaintiff's malicious prosecution claim should proceed against Schrage and Eifert, plaintiff's failure to arraign claim should likewise proceed against Schrage and Eifert. Any failure to arraign claim against defendants Drake and Zysk should be dismissed for lack of personal involvement. See Case, 2017 WL 571530, at *17 (dismissing an excessive detention claims against officers uninvolved in the processing of plaintiff's arrest). Any failure to arraign claim against DA Doorley should also be dismissed for lack of personal involvement.

failure to arrange for plaintiff's arraignment on all charges for which we was arrested on and for which criminal complaints were filed.

Further, the Monroe and NYSP defendants' motions to dismiss these claims based on qualified immunity should be denied. As plaintiff was not arraigned on all charges within 48 hours, defendants have not established that it was "objectively reasonable [for the defendants] to believe that . . . [this] was not a violation of plaintiff's rights." Id. (granting an ADA qualified immunity where the delay in arraignment was less than 48 hours); see also Case, 2017 WL 571530, at *8 (denying qualified immunity and noting that "no reasonable officer could have believed it was permissible to intentionally delay a plaintiff's arraignment").

Accordingly, defendants Egan, Eifert, Monaghan, and Schrage's motions to dismiss plaintiff's failure to arraign claim should be denied and defendants Doorley, Drake, and Zysk's motions should be granted.

IV.    *Failure to Intervene*

Plaintiff alleges that the Monroe and NYSP defendants failed to prevent his arrest and prosecution, and in addition, they failed to intervene to have him arraigned on all charges. SAC ¶¶ 83-86.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). "An officer who fails to intervene is liable for the preventable harm caused by other officers where that officer observes or has reason to know' that other officers have committed a constitutional violation, provided the officer has 'a realistic opportunity to intervene to prevent the harm from occurring.'" Folk v. City of N.Y., No. 15 CV 5810 (WFK), 2017 WL 1102898, at *7 (E.D.N.Y.

Mar. 21, 2017) (quoting Anderson, 17 F.3d at 557). An essential element of a failure to intervene claim is an underlying constitutional violation. Henry-Lee v. City of New York, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) (citing Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 129 (2d Cir. 1997)).

Here, plaintiff's failure to intervene claim should proceed against the NYSP defendants on plaintiff's false arrest claim.[19] In addition, plaintiff's claim against NYSP defendants Eifert and Schrage for failure to intervene regarding plaintiff's prosecution should proceed.[20] Plaintiff's failure to intervene claims against the Monroe defendants should be dismissed as the Monroe defendants either had no personal involvement or are entitled to absolute immunity. However, plaintiff's failure to intervene claim against defendants Egan, Eifert, Monaghan, and Schrage regarding the unreasonable failure to arraign him should also proceed.[21] Accordingly, the Monroe and NYSP defendants' motions to dismiss plaintiff's failure to intervene claim should be granted in part and denied in part.

## V.    *Municipal Liability*

Plaintiff alleges that the County of Monroe is liable for an unconstitutional custom, policy, or practice pursuant to Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-91, (1978).[22]

---

[19] Although an individual defendant may not be liable under both a theory of direct violation and a theory of failure to intervene, "it would be premature to grant defendants' motion at this juncture . . . [as] it is conceivable that one of the [] officer defendants may be found directly liable while the other may escape direct liability but nonetheless be found liable for the failure to intervene. " Gomez, 2017 WL 1034690, at *10 (citing Jackson v. City of New York, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013)).

[20] Drake and Zysk's motion to dismiss plaintiff's failure to intervene claim should be granted as the complaint fails to allege their personal involvement in plaintiff's prosecution. The instant record does not establish that Drake and Zysk had a reasonable opportunity to intervene in plaintiff's prosecution, although they should remain in the case on plaintiff's false arrest claim.

[21] As plaintiff fails to plausibly allege the involvement of defendants Doorley, Drake and Zysk in plaintiff's arraignment/excessive detention claim, these defendants' motions regarding the failure to intervene claim should be granted. See Case, 2017 WL 571530, at *17 (dismissing a failure to intervene in plaintiff's excessive detention claim where plaintiff failed to show personal involvement).

[22] Plaintiff concedes that "Monroe County is immune from a claim for punitive damages." Plaintiff's Memorandum at 19 n.9. Therefore, plaintiff's claim for punitive damages against the County of Monroe should be dismissed.

SAC ¶¶ 87-94.  The Court finds that plaintiff's allegations regarding the County are sufficient to withstand defendants' motion to dismiss.[23]

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" McLennon v. City of N.Y., 171 F. Supp. 3d 69, 94-95 (E.D.N.Y. 2016) (quoting Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015) (internal citations omitted)).  "For a Monell claim to survive a motion to dismiss, a plaintiff must allege 'sufficient factual detail' and not mere 'boilerplate allegations' that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." Ying Li v. City of N.Y., No. 15 CV 1599 (PKC), 2017 WL 1208422, at *35 (E.D.N.Y. Mar. 31, 2017) (quoting Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases)). Plaintiff must specifically "plead and prove: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." McCrary v. Cnty. of Nassau, 493 F. Supp. 2d 581, 588 (E.D.N.Y. 2007) (citing Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)).

"A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with

---

[23] Even if this Court were to grant the individual Monroe defendants' motion to dismiss in full, plaintiff's claim against the County of Monroe should still proceed. Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013) ("It does not follow, however, that the plaintiff must obtain a *judgment* against the individual tortfeasors in order to establish the liability of the municipality. It suffices to plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality.") (emphasis in original). To find otherwise would allow the County of Monroe to "escape[] liability for the tortious conduct of it [prosecutors]" simply because they are entitled to immunity. Id. at 254 (allowing a Monell claim to move forward even though the individual police officers were entitled to qualified immunity); see also Bishop v. City of New York, No. 13 Civ. 9203 (AJN), 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016) (the Court denied defendant's motion to dismiss plaintiff's Monell claims where the claims against the individual officers were dismissed "because they could not be identified and served, not because the Court determined that he failed to plausibly allege a violation of his constitutional rights."); Vasquez v. City of New York, No. 14 Civ. 491 (RMB), 2014 WL 5810111, at *11 (S.D.N.Y. Nov. 6, 2014) (explaining that the City could still be liable under Monell even though the prosecutor was entitled to absolute immunity).

decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff." Moran v. Cnty. of Suffolk, No. 11 CV 3704 (PKC), 2015 WL 1321685 (E.D.N.Y. Mar. 24, 2015) (collecting cases). Here, plaintiff's Monell claim rests on the theories that the County of Monroe (1) has a custom and practice "wherein prosecutors arrest suspects on crimes in multiple jurisdictions, arraign them only on a subset of the charges, and treat the other charges as 'sealed'"; and (2) that the County of Monroe fails to adequately "train its prosecutors to treat arraignments as [a] constitutional right; to obtain probable cause to ensure that suspects would not be falsely arrested or maliciously prosecuted; and promptly to arraign arrested suspects within constitutionally mandated time limits." SAC ¶¶ 87-94.

### A. Custom and Practice

"To establish municipal liability under § 1983, a plaintiff must do more than simply state that a municipal policy or custom exists." Santos v. N.Y. City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir.1993), overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, (1993)). "Mere assertions that a municipality has a custom or policy of violating constitutional rights are insufficient to state [] Section 1983 claims 'in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" Davis v. Lynbrook Police Dep't., 224 F. Supp. 2d 668, 678 (E.D.N.Y. 2002) (quoting Dwares, 985 F.2d at 100)). Moreover, "[t]he Supreme Court has held that '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a

municipal policymaker.'" Giscombe v. N.Y. City Dep't of Educ., 39 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) *(*quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985)); see also Hudson v. Cty. of Dutchess, 51 F. Supp. 3d 357, 368 (S.D.N.Y. 2014) (collecting cases).

Here, plaintiff alleges that the County of Monroe has a "widespread policy, custom or practice wherein prosecutors arrest suspects on crimes in multiple jurisdictions, arraign them on only a subset of the charges, and treat the other charges as 'sealed,' a practice that unconscionably disregards the purpose of arraignments and their role in bail setting." Plaintiff's Opposition at 20. The County of Monroe argues that plaintiff's Monell claim should be dismissed on the grounds that plaintiff cannot show that the "District Attorney's Office has a policy or practice of failing to arraign arrestees on filed charges" nor can plaintiff establish a causal link between the policy and a denial of plaintiff's constitutional rights. Further, the County of Monroe argues that, even if such a policy existed, the County is not liable as the DA represents New York State and not the County of Monroe. County Defendants' Memorandum of Law ("Monroe Memorandum"), ECF No. 58-2, at 5-6. On the instant record, taking the facts alleged in the light most favorable to the non-movant, I find that plaintiff states a claim for municipal liability against the County of Monroe.

In support of plaintiff's allegation of a "widespread policy, custom or practice", plaintiff relies on an email from Assistant District Attorney Egan which states, *inter alia*, that the practice of arraigning individuals on certain charges and not others "is done frequently in cases involving charges in multiple jurisdictions." SAC ¶ 56 (emphasis added). Plaintiff alleges that this practice "unconscionably disregards the purpose of arraignments and their role in setting bail." Plaintiff's Memorandum at 20. Without Egan's email, plaintiff's complaint would likely be speculative and conclusory. Iqbal, 556 U.S. at 678. However, the email supports plaintiff's allegations that the County of Monroe's District Attorney's Office has a widespread policy, custom, or practice of

'frequently' failing to arraign defendants when they are arrested on charges stemming from multiple jurisdictions.

The Monroe defendants assert that the "email does not describe a policy of not arraigning arrestees – instead it describes a decision to not arraign people who 'have never been arrested' and where charges are not filed." Monroe Reply at 2. However, this position is not supported by the record. Plaintiff specifically alleges that he was arrested on six complaints prepared by Eifert and filed by Schrage, yet was only arraigned on two of the six complaints. SAC at ¶¶ 36-39. In fact, Judge James Beikirch, the judge who arraigned plaintiff on the two Henrietta charges, refused to arraign plaintiff on the four complaints regarding conduct in Greece and Irondequoit and directed defendants to arrange for plaintiff's arraignment on those complaints before judges in those jurisdictions. Id. ¶¶ 39-41. Accordingly, defendants' analysis that plaintiff was not arrested on the other charges and that charges were not filed is disingenuous and contradicted by the instant record. Here, plaintiff was arrested on the six Eifert complaints, all charges were filed by Schrage, and plaintiff was only properly presented and arraigned on two of the six charges. On the instant record, defendants' motion to dismiss should be denied as plaintiff has plausibly alleged that defendants' custom, policy, or practice deprived him of his constitutional right to be presented to a neutral judge in a timely fashion.

Notwithstanding the fact that plaintiff has plausibly alleged a custom, policy, or practice, the Monroe defendants assert that the bail bondsman's refusal to issue plaintiff a bail bond is an intervening factor which cannot be considered a reasonably foreseeable consequence of defendants' failure to arraign plaintiff on all six complaints. Monroe Memorandum at 18. The Court is not persuaded

In support of their position, the County defendants cite to <u>Hendrickson v. Thurston County</u>, where the district court for the Western District of Washington, on summary judgment, dismissed plaintiff's allegations surrounding his inability "to post bail . . . for 11 days because of [a] no-bail hold on [an erroneous] outstanding warrant[.]" No. C06-5374 (BHS), 2008 WL 5186538, at *11 (W.D. Wash. Dec. 10, 2008). Plaintiff argues that <u>Hendrickson</u> is neither precedent nor on point. Plaintiff's Opposition at 24-25. Instead, plaintiff suggests that the Ninth Circuit's decision in <u>Mendia v. Garcia</u>, 768 F.3d 1009 (9th Cir. 2014) supports his claim. Plaintiff's Opposition at 24-25. In <u>Mendia</u>, the Court found that plaintiff had adequately alleged a due process violation when he remained in custody because a bail bondsman refused to post bail based on an erroneous immigration detainer. 768 F.3d at 1013. For the purpose of the instant motion, I agree with plaintiff that <u>Mendia</u> is more analogous than <u>Hendrickson</u>.

In <u>Hendrickson</u>, plaintiff argued that an erroneous warrant charge "caused bail bondsmen to refuse him a bond . . . out of fear that [he] would miss his court date . . . ." 2008 WL 5186538, at *11. However, in dismissing Hendrickson's claim on summary judgment, the Court held that he had offered no evidence "in support of the bondsmen's alleged refusal to issue the bond[.]" <u>Id.</u> In contrast, in <u>Mendia</u>, the Ninth Circuit held that "it's unclear how Mendia could have alleged the causal connection between the detainer and the actions of the bail bondsmen any more concretely." 768 F.3d at 1014 (noting that "[h]is complaint relies on words directly from the mouths of the relevant third parties explaining why they took the actions that caused [the] injury.") As Ogunkoya expressly alleges that the bail bondsman he contacted "refused to post the bond solely because of the unarraigned charges", the instant matter hews closer to the reasoning of <u>Mendia</u>. SAC ¶ 57.

Accordingly, Ogunkoya's <u>Monell</u> claim's "chain of causation does not rest on speculation" and is supported with specific factual allegations.[24] <u>Mendia</u>, 768 F.3d at 1015

The Monroe defendants also assert that they are not responsible for plaintiff's alleged injury as they were not the "'but for' cause and the proximate cause" of plaintiff's injury. Monroe Memorandum at 18 (quoting <u>Arnold v. Geary</u>, 582 Fed. Appx. 42, 43 (2d Cir. 2014)). Specifically, the Monroe defendants argue that there are superseding and intervening factors which ultimately delayed plaintiff being released on bond, including the Henrietta Town Court Judge's decision to only arraign plaintiff on two of the six charges. <u>Id.</u> However, "it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty." <u>Zahrey v. Coffey</u>, 221 F.3d 342, 352 (2d Cir. 2000). Importantly, "[t]his is not a case in which the existence of a cause-and-effect relationship between the government's allegedly unlawful conduct and the third parties' injury-inflicting actions is 'purely speculative.'" <u>Mendia</u>, 768 F.3d at 1014 (quoting <u>Simon v. Eastern Ky. Welfare Rights Org.</u>, 426 U.S. 26, 42 (1976)). Further, "what matters is not the length of the chain of causation, but rather the plausibility of the links that comprise the chain." <u>Mendia</u>, 768 F.3d at 1012-13 (internal quotations and citations omitted). Here, plaintiff's complaint expressly alleges a theory of causation showing that the County of Monroe's policy, custom, or practice was "at least a substantial factor motivating [the bail bondsman's] actions." <u>Id.</u> at 1013 (internal quotations and citations omitted). Discovery on these issues will clarify the matter. However, at this stage, plaintiff has sufficiently alleged that

---

[24] The Monroe defendants also argue that plaintiff cannot show causation as he "later obtained a bond without the arraignment" and that "the reluctance of a single bail bondsman to issue a bond" is insufficient. Monroe Reply at 8. However, these are "factual dispute[s] that can't be resolved in the context of a facial attack on the sufficiency of the complaint's allegations." <u>Mendia</u>, 768 F.3d at 1015 (noting that the resolution of causation "must be left for later stages of the litigation"); <u>see also</u> <u>Hendrickson</u>, 2008 WL 5186538 at *11 (where the Court dismissed plaintiff's claim on summary judgment).

the County of Monroe had a custom, policy, or practice where individuals were frequently arraigned on certain charges and not others in cases involving charges from multiple jurisdictions and that the County's failure to arraign him on all charges resulted in his detention for 28 days.

The Court now considers the crucial question of whether DA Doorley can be considered a policymaker for the County of Monroe.[25]  "District attorneys are generally considered to be local officers of their respective counties." Conte v. Cnty. of Nassau, No. 06 CV 4746 (JFB), 2010 WL 3924677, at *27 (E.D.N.Y. Sept. 30, 2010)  (citing Myers v. Cnty. of Orange, 157 F.3d 66, 76 (2d Cir. 1998) (collecting cases).   "Where a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker." Walker v. New York, 974 F.2d 293, 296 (2d Cir. 1992) (DA acted as a manager regarding the office's policy of disclosing exculpatory evidence).  However "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." Ying Jing Gan v. City of N.Y., 996 F.2d 522, 536 (2d Cir. 1993) (citing Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988), cert. denied, 488 U.S. 1014 (1989)).  But, when "a plaintiff's claim[] centers not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office, there can be liability against a New York county[.]" Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1153-54 n.14 (2d Cir. 1995) (internal quotations and citations omitted).

---

[25] Plaintiff specifically alleges that DA Doorley "was in a policy-making position and was otherwise responsible for setting and overseeing policies, customs, and practices at the Monroe County District Attorney's Office." SAC ¶ 7. However, plaintiff has not alleged that Egan or Monaghan had any policymaking role or that the actions they took were undertaken in a supervisory capacity.  Id. ¶¶ 8-9. (stating that Egan and Monaghan were actually "acting under the supervision" of the DA's office).  Therefore, Egan and Monaghan's actions "cannot be said to represent the actions of a policymaker responsible for the alleged policy that caused plaintiff's constitutional deprivation." DeJean v. Cnty. of Nassau, No. 06 CV 6317 (SJF), 2008 WL 111187, at *4 (E.D.N.Y. Jan 8, 2008) (collecting cases) (dismissing plaintiff's claims of municipal liability to the extent they are based on the actions of ADAs without a policymaking role); see also Conte v. Cnty. of Nassau, No. 06 CV 4746 (JFB), 2010 WL 3924677, at *29 (E.D.N.Y. Sept. 30, 2010) ("the question of whether an ADA may be considered a policymaker for purposes of a municipal liability claim depends on whether that ADA has supervisory authority." (collecting cases)).

Here, plaintiff asserts that, "[s]ince the policy at issue does not involve [a] prosecutorial decision[]", Doorley represents the County of Monroe and not New York State. Plaintiff's Opposition at 22. In support of his position, plaintiff cites to Warney v. City of Rochester, 536 F. Supp. 2d 285, 299 (W.D.N.Y. 2008), rev'd on other grounds, 587 F.3d 113 (2d Cir. 2009). In Warney, the Court denied the County of Monroe's motion to dismiss plaintiff's Monell claim alleging that the District Attorney maintained an unconstitutional policy relating to the testing and withholding of exculpatory biological evidence. Id. at 298. In denying the County's motion, the Court found that the District Attorney was not acting in a 'prosecutorial' capacity; rather, the Court considered the DA to be a county policymaker properly subject to Monell liability. Id. (explaining that "the definition of 'prosecutorial' capacity for purposes of this analysis has been 'confined . . . to challenges to specific decisions of the District Attorney [concerning whether] to prosecute[.]'" (quoting Walker, 974 F.2d at 301)). The Monroe defendants argue that the "District Attorney's Office's prosecutorial acts may not fairly be said to represent official policy of the County." Monroe Memorandum at 5. At this juncture, the record is insufficient to determine whether Doorley is a policymaker for purposes of Monell liability. See Conte, at *30 (explaining that such a determination is a "is a fact-intensive inquiry"). Viewing the facts in the light most favorable to plaintiff, Monroe County's custom, policy, or practice of failing to arraign individuals who have been arrested without a warrant on charges arising from multiple jurisdictions within the County may prove to be an administrative rather than a prosecutorial activity. See Peters v. City of Buffalo, 848 F. Supp. 2d 378, 390 (W.D.N.Y. 2012) (denying Erie County's motion to dismiss plaintiff's Monell claim and finding "dismissal at th[e] [motion to dismiss] stage unwarranted" as the "Court has insufficient information to determine whether the [prosecutors] can be described as policymakers such that their acts could extend liability to the municipality"); see also Davis v. City

of New York, No. 16 Civ. 3685 (AMD), slip op. at 19 n. 8 (E.D.N.Y. May 25, 2017) (denying defendants' motion to dismiss and finding that "the question [of] whether the plaintiff's allegations encompass the DA's administrative duties requires the resolution of factual questions and is best reserved for summary judgment or trial").

Accordingly, as plaintiff's allegations are sufficient to state a claim for municipal liability under Monell, the Monroe defendants' motion to dismiss should be denied.[26]

## B. Failure to Train

Plaintiff also asserts a claim for municipal liability on the grounds that the County failed to "train its prosecutors to treat arraignments as [a] constitutional right; to obtain probable cause to ensure that suspects would not be falsely arrested or maliciously prosecuted; and promptly to arraign arrested suspects within constitutionally mandated time limits." SAC ¶ 90.

"[A] [county's] failure to train its subordinates satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (citing City of Canton v. Harris, 489 U.S. 378, 390 (1989)). "'Deliberate indifference' involves the conscious disregard of the risk that poorly-trained employees will cause deprivations of clearly established constitutional rights." Wray v. City of New York, 490 F.3d 189, 196 (2d Cir. 2007) (citing

---

[26] To the extent that plaintiff's Monell claim is premised on a prosecutor's decision whether or not to prosecute, the claim should be dismissed. See Myers, 157 F.3d at 77 (explaining that "the County was found liable not for [the] ADA['s][] decision to prosecute [], but for a DA policy that directed the . . . . ADAs to engage in investigative procedures" that violated individual's rights."); see also Bellamy v. City of N.Y., No. 12 CV 1025 (AMD), 2017 WL 2189528, at *38 (E.D.N.Y. May 17, 2017) (discussing the Supreme Court's decision in Van de Kamp and dismissing plaintiff's Monell claims where "the conduct about which plaintiff complains was prosecutorial"). Again, on the instant record, plaintiff's claim is based on the County's custom, policy, or practice not to present a person arrested without a warrant for a prompt arraignment on all charges, which "is done frequently in cases involving charges in multiple jurisdictions." SAC ¶ 56.

Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 127 n.8 (2d Cir. 2004). "To establish 'deliberate indifference' for a failure to train or supervise claim, the plaintiff must show (1) 'that a policymaker knows 'to a moral certainty' that her employees will confront a given situation;' (2) 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;' and (3) 'that the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights.'" Santos v. N.Y. City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (quoting Walker v. City of New York, 974 F.2d at 297-98 (internal citation omitted)).

"[T]he existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff". Id. at 577 (citing Tuttle, 471 U.S at 823). However, a "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability.'" Connick v. Thomspson, 563 U.S. 51, 62 (1997) (quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 407 (1997). Importantly, this is not the case where plaintiff's allegations are a "simple recitation that there was a failure to train". Regeda v. City of N.Y., No. 09 CV 5427 (KAM) (VVP), 2012 WL 7157703, at *10 (E.D.N.Y. Sept. 7, 2012), report and recommendation adopted, 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013) (citing Pugh v. City of New York, No. 01 CV 0129 (ILG), 2002 WL 398804 (E.D.N.Y. Jan. 15, 2002)).

Here, plaintiff's allegations establish a failure to train claim relating specifically to how the Monroe defendants handle arraignments in cases arising from warrantless arrests on charges in

multiple jurisdictions.[27]  First, the record establishes that the events plaintiff alleges are neither rare nor unforeseen.  Plaintiff specifically alleges that the Monroe County DA's Office regularly handles similar cases to his.  Second, Egan's email demonstrates that employees of the Monroe County DA's Office frequently fail to arraign arrestees on certain charges arising out of multiple jurisdictions and that training could correct the situation.  Finally, on the facts alleged, "the wrong choice by [an]  . . . [ADA] will frequently cause the deprivation of a citizen's constitutional rights[.]" Walker, 974 F.2d at 297-98 (citing City of Canton, 489 U.S.at 390) (emphasis added). Again, Egan's email states that the failure to arraign individuals in plaintiff's circumstances "is done frequently in cases involving charges in multiple jurisdictions[.]" SAC ¶ 56 (emphasis added).  "[T]his Court recognizes the 'formidable hurdle' plaintiff[] face[s] at the pleading stage, and finds that [p]laintiff[] [has] 'nudged [his] claims across the line from conceivable to plausible." Case, 2017 WL 571530, at *24 (quoting Osterhoudt v. City of N.Y., No. 10 CV 3173 (RJD), 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) and Twombly, 550 U.S. at 570).

The Monroe defendants argue that under Van de Kamp, "claims regarding arraignment, probable cause, and bail hearings are entitled to absolute immunity" and thus plaintiff's failure to train claims should be dismissed. Monroe Memorandum at 15-16. Plaintiff asserts that Van de Kamp does not extend to the instant matter as plaintiff alleges that immunity does not extend to "administrative tasks performed by district attorneys that are not intimately associated with a prosecutor's advocative role during trial." Plaintiff's Opposition at 16 (citing Norton v. Town of Brookhaven, 33 F. Supp. 3d 215, 233 (E.D.N.Y. 2014), on reconsideration, 47 F. Supp. 3d 152 (E.D.N.Y. 2014)).  Van de Kamp makes clear that absolute immunity bars claims for failure to

---

[27] Plaintiff has failed to set forth sufficient allegations regarding the County of Monroe's failure to adequately train prosecutors "to obtain probable cause to ensure that suspects would not be falsely arrested or maliciously prosecuted". SAC ¶ 90.  Therefore, any Monell claim premised on a failure to 'obtain probable cause' should be dismissed.

supervise and train where the claim relies "upon underlying misconduct by the deputy prosecutors at trial, who [are] themselves entitled to absolute immunity." Nortin, 33 F. Supp. 3d at 232 (citing Van de Kamp, 55 U.S. 335) (further explaining that "Van de Kamp does not afford immunity for supervisory decisions unless they relate to conduct during the prosecution.'); see also Dettelis v. Cty. of Cattaraugus, No. 14 CV 1096A (SR), 2016 WL 1729554, at *4 (W.D.N.Y. Mar. 31, 2016), report and recommendation adopted, 2016 WL 1728771 (W.D.N.Y. Apr. 29, 2016) ("[W]here the claim is that faulty training or supervision allowed an individual prosecutor to err during the course of the prosecution, absolute immunity applies equally to the supervisory prosecutor as to the trial prosecutor."). Importantly, "[t]he Supreme Court's decision in Van de Kamp did not . . . remove municipal liability for the managerial policies of a county district attorney's office." Bellamy, 2017 WL 2189528, at *38 n.76.

Accordingly, on the instant record, plaintiff's failure to train claim should proceed on the grounds that the County of Monroe's District Attorney's Office failed to train its ADAs on fulfilling their obligations under the Constitution to promptly present a person arrested without a warrant for a judicial determination of probable cause on all charges. McLaughlin, 500 U.S. at 56-57. Therefore, the Monroe defendants' motion to dismiss plaintiff's failure to train claim should be granted in part and denied in part.

**CONCLUSION**

Accordingly, the Monroe and NYSP defendants' motions to dismiss should be granted in part and denied in part. The Monroe defendants' motion to dismiss should be granted on plaintiff's false arrest and malicious prosecution claims. The Monroe defendants' motion to dismiss should be denied on plaintiff's failure to arraign, failure to intervene, and municipal liability claims. The NYSP defendants' motion should be granted on plaintiff's malicious prosecution and failure to

intervene claims against defendants Drake and Zysk. The NYSP defendants' motion should be denied on plaintiff's malicious prosecution claim against defendants Eifert and Schrage, plaintiff's false arrest and failure to intervene regarding his arrest claims against all NYSP defendants, and plaintiff's failure to intervene claim regarding his prosecution and arraignment against defendants Eifert and Schrage.

Plaintiff's following claims should proceed: (1) false arrest against the NYSP defendants; (2) malicious prosecution against defendants Eifert and Schrage; (3) failure to intervene in plaintiff's false arrest against the NYSP defendants; (4) failure to intervene in plaintiff's prosecution against defendants Eifert and Schrage; (5) failure to arraign and failure to intervene in plaintiff's arraignment against defendants Egan, Eifert, Monaghan, and Schrage; and (6) municipal liability against the County of Monroe.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 106S. Ct. 466, 88 L. Ed. 2d 435 (1985).

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: June 2, 2017
      Brooklyn, New York