UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
SEUN OGUNKOYA,

                *Plaintiff*,                  **Memorandum & Order**

   -against-                         15-CV-6119(KAM)(LB)

COUNTY OF MONROE, et al.,

                *Defendants*.
---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Presently before the court in this 42 U.S.C. § 1983 lawsuit brought against the County of Monroe, New York and several of its employees, and against defendants employed by the State of New York, are the defendants' motions to dismiss the Third Amended Complaint.[1]  For the reasons herein, the County Defendants' motion to dismiss is denied, but the punitive damages claim against the County is stricken, and the State Defendants' motion to dismiss is denied.  This case shall proceed to discovery on all of the claims asserted by the plaintiff in the Third Amended Complaint, although the plaintiff may not recover punitive damages against the County of Monroe.

---

[1] This action was initially brought against the County of Monroe, District Attorney Sandra Doorley, District Attorney Bureau Chief Mark Monaghan, and Assistant District Attorney James Egan (collectively, the "County Defendants"), and New York State Police Investigators and Troopers Albert Drake, Darius Zysk, Peter Schrage, and Mark Eifert (collectively, the "State Defendants," and together with the County Defendants, the "Defendants").  Assistant District Attorneys Egan and Monaghan were dismissed from the case on May 6, 2019.  (*See* ECF No. 127.)

**Background**

The court assumes the parties' familiarity with the underlying facts alleged and the procedural history of this case, which were set forth in Magistrate Judge Lois Bloom's Report and Recommendation (ECF No. 65 (the "R&R")) and this court's Memorandum and Order adopting the R&R (ECF No. 82 ("Nov. 11, 2017 Oder")), which adjudicated Defendants' previous motions to dismiss.  The alleged facts and procedural history are summarized here only to the extent relevant to deciding the pending motions.

I.   **Factual Background**

Seun Ogunkoya ("Plaintiff") brought these claims alleging constitutional violations in connection with his warrantless arrest on charges stemming from three fraudulent credit card transactions by an individual in Monroe County, New York.  (*See* ECF No. 122, Third Amended Complaint ("TAC"), at ¶¶ 22-40.)  On April 26, 2014, an individual used fraudulent or stolen credit cards to purchase $28,000 in gift cards from three Home Depot stores in the towns of Greece, Henrietta, and Irondequoit, which are all near Rochester and located in Monroe County.  (*Id.* at ¶ 15.)  Defendant Eifert, an investigator for the State, learned during the subsequent investigation that Plaintiff used his credit card to make small purchases at two of the three relevant Home Depot stores (in Greece and Henrietta)

2

around the same time the gift cards were fraudulently purchased. (*Id.* at ¶ 17.) Eifert prepared six felony complaints against Plaintiff: one identity theft complaint and one grand larceny complaint for each of the three transactions in Greece, Henrietta, and Irondequoit. (*Id.* at ¶ 18.) Without obtaining an arrest warrant, State Defendants Drake and Zysk arrested Plaintiff at his home in Brooklyn, New York on the morning of February 20, 2015. (*Id.* at ¶¶ 21, 23.)

After the arrest, Plaintiff was transported from Brooklyn to Henrietta, where all six complaints were filed with the local court, but Plaintiff was arraigned only on the identity theft and grand larceny complaints related to the Henrietta transaction. (*Id.* at ¶¶ 33-34.) The Henrietta judge who arraigned Plaintiff refused to arraign Plaintiff on the charges related to the Greece and Irondequoit transactions, and directed State Defendant Schrage to take Plaintiff for arraignment in the appropriate courts on those charges the next business day. (*Id.* at ¶¶ 35-37.) Defendants did not comply with the Henrietta judge's directive to take Plaintiff for any further arraignments after his initial arraignment on the on the Henrietta charges. (*Id.* at ¶ 40.)

After retaining an attorney, Plaintiff made multiple requests to be arraigned on the charges in Greece and

Irondequoit.  (*Id.* at ¶¶ 42, 44, 62, 69.)  Plaintiff alleges
that because he was never arraigned on those charges, he was
deprived of the opportunity to post bail and remained
incarcerated in Monroe County for 28 days longer than necessary.
(*Id.* at ¶¶ 1, 59, 73.)  Plaintiff alleges that the clerk of the
County court in Henrietta twice refused to process his bail bond
(on February 25, 2015, and on March 17, 2015) because there were
outstanding charges on which he had not been arraigned in Greece
and Irondequoit.  (*Id.* at ¶¶ 59, 73.)

Plaintiff was eventually indicted and tried on charges
arising from all three identity theft complaints, but was never
indicted or tried on any of the grand larceny complaints.  (*Id.*
at ¶ 76.)  Ultimately, Plaintiff was acquitted of all charges
following a jury trial.  (*Id.* at ¶ 79.)

## II.  Procedural History

Plaintiff initially commenced this action *pro se*,
filing his Complaint on October 26, 2015, and an Amended
Complaint on February 16, 2016.  (ECF Nos. 1, 19.)  On July 12,
2016, *pro bono* counsel appeared to represent Plaintiff, and on
August 16, 2016, Plaintiff filed a Second Amended Complaint.
(ECF No. 43.)  The County Defendants and the State Defendants
moved to dismiss the Second Amended Complaint in January 2017,
and Plaintiff opposed.  (*See* ECF Nos. 55-60.)

4

Those prior motions to dismiss were referred to Magistrate Judge Lois Bloom for a Report and Recommendation. Judge Bloom issued a Report and Recommendation in June 2017, recommending that both motions to dismiss be granted in part and denied in part.  Judge Bloom construed Plaintiff's Second Amended Complaint to plead the following claims: false arrest/false imprisonment[2] and the related failure to intervene against all individual defendants; malicious prosecution and the related failure to intervene against all individual defendants; failure to arraign and the related failure to intervene against all individual defendants; failure to supervise against District Attorney Doorley; and municipal liability claims against Monroe County for an unconstitutional custom, policy, or practice, and for failure to train.[3]

Judge Bloom recommended that this court: (1) grant the County Defendants' motion to dismiss the false arrest claims, malicious prosecution claims, and failure to supervise claim against District Attorney Doorley; and (2) grant the State

---

[2] As Judge Bloom noted, the torts of false arrest and false imprisonment are "largely synonymous" and are generally analyzed as a single claim.  *See Gomez v. City of New York*, 2017 WL 1034690, at *2 n.2 (E.D.N.Y. Mar. 16, 2017) (citing *Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007)).

[3] Plaintiff's failure to train claim focused on the County Defendants' failure to train prosecutors regarding the constitutional requirements governing probable cause determinations.

Defendants' motion to dismiss Plaintiff's malicious prosecution
and failure to intervene claims against State Defendants Drake
and Zysk.  (R&R at 35-36.)  Judge Bloom recommended that the
following claims proceed to discovery: (1) false arrest and
failure to intervene in the false arrest against all State
Defendants; (2) malicious prosecution and failure to intervene
in a malicious prosecution against State Defendants Eifert and
Schrage; (3) failure to arraign and failure to intervene with
regard to the failure to arraign against Eifert and
Schrage; (4) failure to arraign and failure to intervene against
County Defendants Monaghan and Egan; and (5) the municipal
liability claims against the County of Monroe.  This court
adopted Judge Bloom's R&R on September 30, 2017, and issued a
separate Memorandum and Order setting forth its reasoning for
doing so on November 11, 2017.

        The County Defendants appealed the motion to dismiss
decision to the Second Circuit.  In January 2019, the Second
Circuit issued a decision reversing this court's order with
respect to County Defendants Monaghan and Egan, holding that
both were entitled to absolute prosecutorial immunity and thus
were immune from Plaintiff's failure to arraign and failure to
intervene claims.  *See generally Ogunkoya v. Monaghan*, 913 F.3d
64 (2d Cir. 2019).  The Second Circuit dismissed the County

Defendants' other grounds for appeal as "premature," expressing no view on the merits, and remanded Plaintiff's lawsuit to this court for further proceedings.  *Id.* at 73 & n.3.

On March 29, 2019, with Defendants' consent, Plaintiff filed a Third Amended Complaint.  The Defendants filed the instant motions to dismiss, which Plaintiff opposed.  (*See* ECF Nos. 131-36.)

## Legal Standard

Plaintiff's complaint must be dismissed if it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), the court evaluates the sufficiency of a complaint under a "two-pronged approach."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  First, courts are not bound to accept legal conclusions when examining the sufficiency of a complaint.  *See id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Second, the court must assume all well-pleaded facts are true and then "determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679; *Twonbly*, 550 U.S. at 555-56.  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

7

Plaintiff brought this action pursuant to 42 U.S.C. §
1983 ("Section 1983"), which provides that:

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State .
> . . subjects, or causes to be subjected, any citizen of
> the United States . . . to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of
substantive rights, but a method for vindicating federal rights
elsewhere conferred by those parts of the United States
Constitution and federal statutes that it describes." *Baker v.
McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Thomas v. Roach*,
165 F.3d 137, 142 (2d Cir. 1999).

To maintain a Section 1983 claim, a plaintiff must
plausibly allege two elements.  First, "the conduct complained of
must have been committed by a person acting under color of state
law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).
Second, "the conduct complained of must have deprived a person of
rights, privileges, or immunities secured by the Constitution or
laws of the United States." *Id.; see also McCugan v. Aldana-
Brnier*, 752 F.3d 224, 229 (2d Cir. 2014).

## Discussion

As an initial matter, Plaintiff and the County
Defendants disagree about the proper scope of the court's review

8

with respect to the County Defendants' motion.  Plaintiff argues
that the court is limited to considering only whether his new
theories presented in the Third Amended Complaint must be
dismissed, which are Substantive Due Process claims against
State Defendants Eifert and Schrage, and an additional theory of
*Monell* liability against Monroe County (based on Monroe County's
alleged failure to train its prosecutors regarding the
constitutional rights connected to arraignments and bail).  (*See*
ECF No. 134, Plaintiff's Memorandum in Opposition to the Motions
to Dismiss ("Opp.") at 1-2, 5.)  The County Defendants assert
that Plaintiff "changed the facts he alleged," and argue for
dismissal of Plaintiff's *Monell* claim against the County in its
entirety.  (ECF No. 135, County of Monroe's Reply to Plaintiff's
Opposition ("Cty. Def. Reply") at 1; *see* ECF No. 131, Memorandum
in Support of County of Monroe's Motion to Dismiss ("Cty. Def.
Mem.") at 3.)

        "[T]he filing of an amended complaint 'does not
automatically revive the defenses and objections a defendant
waived in its first motion to dismiss, nor does it allow a
defendant to advance arguments that could have been made in the
first motion to dismiss.'"  *Falcon v. City Univ. of New York*,
2016 WL 3920223, at *13 (E.D.N.Y. July 15, 2016) (quoting *Jones
v. U.S. Bank Nat. Ass'n*, 2012 WL 899247, at *8 (N.D. Ill. Mar.

9

15, 2012)).  Therefore, in considering both the County
Defendants' motion to dismiss and the State Defendants' motion
to dismiss, the court denies the motions to the extent they
raise defenses or objections that could have been or were
previously presented or decided.  The court will only consider
arguments that Defendants could not have advanced in their
previous motions to dismiss.  *See Naples v. Stefanelli*, 2015 WL
541489, at *5 (E.D.N.Y. Feb. 7, 2015) (where defendants "could
have" made argument "in their first motion to dismiss, but they
did not," argument is waived).  To the extent Defendants raise
the same grounds for dismissal, the court's prior "decision
regarding an issue of law made at [the earlier] stage of [this]
litigation [remains] binding precedent, to be followed in
subsequent stages of the same litigation." *Scottish Air Int'l,
Inc. v. British Caledonian Grp., PLC.*, 152 F.R.D. 18, 24
(S.D.N.Y. 1993).

## I.   The County Defendants' Motion to Dismiss

Plaintiff's theory of liability against the County of
Monroe is that the County's District Attorney's Office had a
policy wherein individuals who were arrested for suspected
offenses in multiple jurisdictions would be arraigned only on a
subset of the charges, while the other charges would be treated
as "sealed," thus preventing the posting of bail once it was

10

fixed.  (TAC ¶¶ 56, 62-63, 67, 107, 109, 113.)  Plaintiff's new gloss on this theory, as alleged in the Third Amended Complaint, is that the policy, combined with the District Attorney's Office's failure to train and supervise its prosecutors about the bail process, violated Plaintiff's constitutional rights to prompt arraignments and to post bail once it is fixed.  (*Id.* at ¶¶ 49-50, 108-14.)

To sustain a *Monell* claim against a municipality, a plaintiff must adequately allege: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)).  The County Defendants argue for dismissal of Plaintiff's *Monell* claim against the County Defendants in its entirety because: (1) there was no underlying constitutional violation, as the County had no duty to schedule or hold arraignments, (2) there was no proximate cause between an alleged County policy and Plaintiff's alleged injury, (3) Plaintiff failed to allege facts sufficient to plead a *Monell* claim against the County Defendants for failure to train, and (4) the County is entitled to absolute immunity.  (Cty. Def. Mem. at 4, 17-25.)  The County Defendants

11

also argue that Plaintiff's request for punitive damages from the County must be dismissed.  (*Id.* at 25.)

### A. Underlying Constitutional Violation

Plaintiff alleges that his constitutional rights to be arraigned and to post bail were violated because he was unable to timely post bail after bail was fixed, as a result of being arraigned only on the charges in Henrietta, despite his requests for arraignment on all charges arising from alleged offenses in Greece and Irondequoit.  (TAC ¶¶ 42, 44, 57-59, 107-14.)  The County Defendants argue that there was no requirement to arraign Plaintiff in Greece and Irondequoit because those charges had not yet been filed with a court, though Plaintiff alleges those charges were filed with the Henrietta Court.  (Cty. Def. Mem. at 6-7; *see* TAC ¶ 34)  The County Defendants, who allegedly directed that the Greece and Irondequoit charges not be presented for arraignment by judges in those towns (*see* TAC ¶¶ 56, 61-63, 67), made the same argument in their previous motion to dismiss (*see* R&R at 20 n.17).

This court has already found an underlying constitutional violation with respect to the failure to arraign Plaintiff on the charges in Greece and Irondequoit.  "What is constitutionally required is that, except in extraordinary circumstances, [an] arrestee be given a hearing into probable

12

cause for the arrest within 48 hours." *Bryant v. City of New York*, 404 F.3d 128, 138 (2d Cir. 2005). "In New York, a probable cause determination is made at arraignment." *Id.*

As recounted in Judge Bloom's R&R, which this court adopted in full, Henrietta Town Court Judge James Beikirch declined to arraign Plaintiff on the charges related to the transactions in Greece and Irondequoit. (R&R at 19-20.) Judge Beikirch directed State Defendant Schrage to have Plaintiff arraigned on the Greece and Irondequoit charges the next business day, but none of the Defendants ever acted to present Plaintiff to a judge on those charges at any point in time. (*Id.*) Judge Bloom found "that such '[l]egal process did not expunge [Plaintiff's] Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention – probable cause to believe he committed a crime.'" (*Id.* at 20) (quoting *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919-20 (2017)).

Plaintiff plausibly alleged that an individual in his situation had a constitutional right to appear before a judge for arraignment on all charges, and once bail was set, to post bail and remain at liberty prior to trial. Because this court has found that Plaintiff stated a claim with respect to an underlying constitutional violation for the County Defendants'

13

policy and the Defendants' failure to arraign on all charges,
the County Defendants' arguments on this point are respectfully
rejected.  *See Naples*, 2015 WL 541489, at *5.

        The County Defendants point to language in the Second
Circuit's intervening decision on prosecutorial immunity,
arguing that the Second Circuit held that "[f]urther
arraignments on the Greece and Irondequoit charges were not
necessary." (Cty. Def. Mem. at 5, 12 (quoting *Ogunkoya*, 913
F.3d at 71).)  That overstates the scope of the Second Circuit's
specific focus, which was on the individual County Defendants'
prosecutorial immunity, and not the claims against the County
itself.

        The Second Circuit referenced the determination made
by Assistant District Attorney Egan (i.e., that "[f]urther
arraignments . . . were not necessary") as "directly connected
with the conduct of a trial and require[ing] legal knowledge and
the exercise of related discretion," and thus held that absolute
prosecutorial immunity applied to that determination.  *Ogunkoya*,
913 F.3d at 71 (quotation and alterations omitted).  The Second
Circuit made no findings about the viability of Plaintiff's
claims based on the County's policy and practice of not
providing for the arraignment on all charges, thus resulting in
the deprivation of a defendant's liberty after bail had been

14

set.   Nor did the Second Circuit determine that further
arraignments were not necessary at all in order for Plaintiff to
post bail, nor state any legal conclusions that further
arraignments and the right to post bail, once set, were required
by the Constitution.   Moreover, the Second Circuit expressly
declined to consider the County Defendants' appeal of this
court's prior decision allowing Plaintiff's *Monell* claim to
proceed.   *Id.* at 72-73.   "[T]he inquiries of prosecutorial
immunity and state or local policymaking [for purposes of *Monell*
liability] are separate."   *Bellamy v. City of New York*, 914 F.3d
727, 760 (2d Cir. 2019) (quoting *Goldstein v. City of Long
Beach*, 715 F.3d 750, 760 (9th Cir. 2013)); *see Warney v. Monroe
Cty.*, 587 F.3d 113, 126 (2d Cir. 2009) ("The elements of a
*Monell* claim . . . are not inextricably intertwined with the
question of absolute immunity.").

        Accordingly, Plaintiff has adequately alleged an
underlying constitutional violation to sustain a *Monell* claim
against the County of Monroe.

### B. Proximate Cause

        Plaintiff must not only allege that he suffered a
constitutional deprivation, but also that the County's policy
caused that violation.   *See Cash v. Cty. of Erie*, 654 F.3d 324,
340 (2d Cir. 2011).   The County Defendants argue that no policy

of the County could have prevented the Plaintiff's arraignment, because under New York law, the courts (not prosecutors) have a non-delegable duty to arraign.  (Cty. Def. Mem. at 9-12.)

        The County Defendants' causation argument with respect to the alleged policy was also previously rejected by Judge Bloom (*see* R&R at 27-30), and by this court (*see* Nov. 11, 2017 Order at 43-44).  At the motion to dismiss stage, it is sufficient that Plaintiff's allegation of an unconstitutional policy is supported by an email in which Assistant District Attorney Egan wrote: "There is no need to ever arraign [Plaintiff] on the charges in local court. . . .  The other charges are essentially 'sealed' charges since he has never been arrested or arraigned on them. . . .  This is done frequently in cases involving charges in multiple jurisdictions."  (TAC ¶ 63.) Based on this email, Plaintiff has adequately alleged that the District Attorney's Office had in place a policy and practice that individuals charged with or held for crimes in multiple jurisdictions were arraigned only on a subset of the charges, while the other charges were treated as "sealed."  Plaintiff further alleged that "the Court Clerk refused to process [Plaintiff's] bond due to the Pending Charges noted in [his] bond paperwork and prisoner intake forms," and that this impediment to bail was known or foreseeable to the County

16

Defendants.  (*Id.* at ¶ 57-59; *see also id.* at ¶ 73.)  Thus, the
court respectfully rejects the County Defendants' contention
that the chain of causation was broken.  As this court
previously held, "[d]etermination of whether there is proximate
cause [between that policy and the deprivation of Plaintiff's
rights] will require the parties to develop the record on the
role of the bail bondsman, the meaning of a 'sealed' complaint
or charge, and the District Attorney's specific policies, if
any, with regard to denying arraignment on certain charges."
(Nov. 11, 2017 Order at 44.)  The court maintains its previous
holding with respect to the instant motions.

        The County Defendants now contend that Plaintiff
"changed the facts he alleged," in the following manner:
Plaintiff originally alleged that his own bail bondsman refused
to issue a bond due to the pending charges against him in other
jurisdictions, but Plaintiff now alleges that the County court
clerk refused to approve the bail bond.  (Cty. Def. Reply at 1-
3; *see* TAC ¶¶ 58-59.)  This change is immaterial to the court's
analysis with respect to causation.  Plaintiff alleges that the
County was directly involved in the failure to arrange for
Plaintiff's arraignments before the courts in Greece and
Irondequoit, and the court accepts those facts as true at this
stage.  Specifically, Plaintiff alleges that when State

Defendant Eifert asked Bureau Chief Monaghan "[w]hat to do re: Greece, Irondequoit," "Monaghan told Investigator Eifert '[h]old for now.'" (TAC ¶ 56.) Plaintiff also cites an email in which his then-counsel recounted that the Greece clerk advised him that Assistant District Attorney "Egan had asked the court to hold off on scheduling an arraignment," and "Egan had also asked the Irondequoit Court Clerk to hold off on scheduling an arraignment." (*Id.* at ¶ 62.) Thus, the County Defendants' policy and practice prevented the clerk and the court from scheduling an arraignment for the charges in Greece and Irondequoit, and allegedly caused Plaintiff's arraignment and ability to post bail, set by the Henrietta court, to be unconstitutionally delayed.

In order to sufficiently plead causation, Plaintiff must only allege that the constitutional deprivation "was a reasonably foreseeable consequence" of the County Defendants' policy, *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 162 (S.D.N.Y. 2009), and Plaintiff has done so, *see Lynch v. City of New York*, 335 F. Supp. 3d 645, 654 (S.D.N.Y. 2018) (there is a "liberty interest in paying bail once it is fixed and in being released once bail is paid").

The County Defendants devote a large portion of their briefing to an attempt to distinguish *Lynch*, a case from the

18

Southern District of New York.  (*See* Cty. Def. Mem. at 17, Cty. Def. Reply at 5-6.)  The County Defendants argue that in *Lynch*, a city jail failed to process bail, whereas in this case, a local court (not the County) was responsible for processing bail.  The County Defendants ignore their own direct role in preventing Plaintiff from posting bail, as alleged in the Third Amended Complaint.  Discovery in this case may ultimately reveal that the actions of court clerks or some other officials intervened and broke the chain of causation.  At this stage, however, based on the allegations and the emails cited in the Third Amended Complaint, Plaintiff has adequately alleged that the deprivation of his rights to be arraigned and to post bail was a reasonably foreseeable consequence of the County's policy to arraign him on only a subset of the charges, seal the remaining charges, and refuse to permit arraignment on all charges.

### C. Plaintiff's Failure to Train Theory

Plaintiff has alleged that, in addition to the County's unconstitutional policy, the County's failure to train its prosecutors to ensure prompt arraignments and thus provide the opportunity to seek and post bail caused his constitutional injuries.  (TAC ¶¶ 50, 110.)  Plaintiff alleges that the County Defendants do not have any policies, procedures, guidelines, or

19

training for prosecutors to safeguard the constitutional
interests in the bail process once bail has been fixed by a
court.  (*Id.* at ¶¶ 49-50.)

   "[T]he inadequacy of [government employee] training
may serve as the basis for [Section] 1983 liability only where
the failure to train amounts to deliberate indifference to the
rights of persons with whom the [employees] come into contact."
*City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "The issue
in a case like this one . . . is whether th[e] training program
is adequate; and if it is not, the question becomes whether such
inadequate training can justifiably be said to represent [the
municipality's] 'policy.'"  *Id.* at 390.

   The County Defendants argue that Plaintiff has failed
to adequately allege a failure to train, because Plaintiff "only
points to his own circumstance," while a failure to train
requires "other similar incidents that would put anyone on
notice such training was required."  (Cty. Def. Mem. at 14
(citing *Connick v. Thompson*, 563 U.S. 51 (2011) and *Van de Kamp
v. Goldstein*, 555 U.S. 335 (2009)).)  The cases relied upon by
the County Defendants are nuanced, and do not *require* a
plaintiff to allege "similar incidents" to sustain a failure to
train claim at the motion to dismiss stage.  In *Connick*, for
example, the Supreme Court held that the plaintiff could not

20

succeed on a failure to train claim against a prosecutor's office based on a single *Brady* violation by the office, because applying *Brady* and other legal rules is a "threshold requirement" of becoming a practicing prosecutor, and thus "recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law."  563 U.S. at 66-67. In this case, however, Plaintiff has not merely alleged that prosecutors received insufficient training on a basic legal issue for which training ought not be required.  Rather, Plaintiff's allegation is that prosecutors were not trained regarding the constitutional interests arising out of a specific situation—i.e., where a detainee's bail has been fixed by one court, but related charges in other jurisdictions remain pending, and the detainee is allegedly prevented by the County's policy and practice from arraignment on the charges in the other jurisdictions.  (TAC ¶¶ 50, 110-12.)  Furthermore, *Connick* was an appeal to the Supreme Court following a renewed motion for judgment as a matter of law after a jury verdict; the standard to be applied there is not relevant to the pleading standard a plaintiff must meet under Rule 12(b)(6).  *See Trujillo v. City & Cty. of Denver*, 2017 WL 1364691, at *5 (D. Colo. Apr. 14, 2017) ("[T]he evidentiary strictness applied in *Connick* is not

21

appropriate for this Court to apply [at the motion to dismiss stage], where the question is only whether [the plaintiff]'s pleadings adequately state a claim.").

For Plaintiff's failure to train theory to survive the County Defendants' motion to dismiss, Plaintiff need only plead facts that, if true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  Accepting Plaintiff's factual allegations as true, it is not necessary for Plaintiff to allege "similar incidents" at this stage.  Moreover, the aforementioned email sent by Assistant District Attorney Egan admitted that Plaintiff's situation was "frequently" handled the same way "in cases involving charges in multiple jurisdictions." (*Id.* at ¶ 63.)  Plaintiff sufficiently alleges that arraigning suspects on only a subset of pending charges is a constitutional violation, and that the Egan email regarding the County's policy and practice makes plausible that policymakers knew to a moral certainty that the failure of the District Attorney's Office to provide adequate training for prosecutors in those situations created a risk of constitutional violations that would repeatedly recur.

### D. Absolute Immunity

The County Defendants argued that Plaintiff's claims against Monroe County are essentially claims against the

Assistant District Attorneys acting in their official capacities, and thus are barred by the Eleventh Amendment. (Cty. Def. Mem. at 17-25.)  However, in their reply brief, the County Defendants concede that this court is bound by the Second Circuit's decision in *Bellamy*, 914 F.3d 727.  (Cty. Def. Reply at 7.)  In *Bellamy*, the Second Circuit, citing a long line of cases, reiterated the principle that prosecutorial immunity and municipal liability are "separate" inquiries, and "the actions of county prosecutors . . . are generally controlled by municipal policymakers for purposes of *Monell*, with a narrow exception . . . being the decision of whether, and on what charges, to prosecute."  914 F.3d at 759-60.  Because Plaintiff's claims regarding the County's alleged policy, practice, and failure to train do not fall within that narrow exception, the claims are not barred.

### E. Punitive Damages

The County Defendants' final argument is that municipalities are not subject to punitive damages.  (Cty. Def. Mem. at 25.)  The County Defendants are correct,[4] *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), and

---

[4] A request for punitive damages is not a separate claim subject to dismissal.  *See, e.g., Eugene Iovine Inc. v. Rudox Engine & Equip. Co.*, 871 F. Supp. 141, 147 (E.D.N.Y. 1994), *aff'd*, 62 F.3d 1412 (2d Cir. 1995).  Instead, the court construes the County Defendants' motion as a motion to strike the remedy of punitive damages.

23

Plaintiff does not argue otherwise in his opposition to the
County Defendants' motion to dismiss.  Thus, Plaintiff's request
for punitive damages against the County of Monroe (*see* TAC at
22) is denied and stricken.

For the foregoing reasons, Plaintiff has sufficiently
alleged a *Monell* claim against Monroe County for an
unconstitutional policy and failure to train.  The County
Defendants' motion to dismiss is therefore granted only with
respect to Plaintiff's request for punitive damages against
Monroe County, and denied in all other respects.

## II.  The State Defendants' Motion to Dismiss

Plaintiff's Third Amended Complaint asserts that State
Defendants Eifert and Schrage violated Plaintiff's substantive
due process rights under the Fourteenth Amendment by
"arbitrarily and irrationally interfer[ing] with his right to
post bail." (Opp. at 12; *see* TAC ¶¶ 85-90.)  The State
Defendants move to dismiss this claim on three grounds: (1)
there was no underlying constitutional violation because there
was no need for Plaintiff to be arraigned on the charges in
Greece and Irondequoit, (2) State Defendants Eifert and Schrage
were not personally involved in Plaintiff's ability to post
bail, nor were they a proximate cause of his alleged injury, and
(3) Eifert and Schrage are entitled to qualified immunity under

24

the Eleventh Amendment.  (*See generally* ECF No. 133, State of
New York' Memorandum in Support of Motion to Dismiss ("State
Def. Mem.").)

The Due Process Clause of the Fourteenth Amendment was
"intended to secure the individual from the arbitrary exercise
of the powers of government." *Daniels v. Williams*, 474 U.S.
327, 331 (1986) (quoting *Hurtado v. California*, 110 U.S. 516,
527, (1884)).  While a "procedural due process claim challenges
the procedure by which [deprivation of liberty] is effected, a
substantive due process claim challenges the 'fact of the
[deprivation]' itself." *Ying Li v. City of New York*, 246 F.
Supp. 3d 578, 625 (E.D.N.Y. 2017) (quoting *Southerland v. City
of New Yor*k, 680 F.3d 127, 142 (2d Cir. 2012)) (alterations in
original).

"To state a substantive due process claim, [a]
plaintiff[] must allege (1) a valid liberty or property
interest, and (2) defendants infringed on that interest in an
arbitrary or irrational manner." *Calicchio v. Sachem Cent. Sch.
Dist.*, 2015 WL 5944269, at *8 (E.D.N.Y. Oct. 13, 2015) (citing
*Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d
Cir. 2001) and *Natale v. Town of Ridgefield*, 170 F.3d 258, 262
(2d Cir. 1999)).  Regarding the first prong, although "the
authority in th[e Second] Circuit is sparse, other federal

25

courts of appeals have recognized that the fixing of bail gives rise to a liberty interest in paying bail that is protected by substantive due process." *Lynch*, 335 F. Supp. 3d at 653. Regarding the second prong, a "plaintiff must show not just that the action was literally arbitrary, but that it was 'arbitrary in the constitutional sense.'" *Id.* (quoting *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005)).  Only conduct by an official that "shocks the conscience" can form the basis for a substantive due process claim.  *O'Connor*, 426 F.3d at 203. "[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken."  *Id.*

### A. Underlying Constitutional Violation

The State Defendants argue that there was no constitutional requirement for Plaintiff to be arraigned on the charges in Greece and Irondequoit, because he was properly detained on the Henrietta charges, for which he had been arraigned.  (State Def. Mem. at 5.)

As discussed in the context of the County Defendants' motion to dismiss, this court has already found an underlying constitutional violation with respect to the lack of Plaintiff's arraignment on the charges in Greece and Irondequoit.  Plaintiff plausibly alleged that he had a constitutional right to appear

26

before a judge for arraignment on all charges.  Like the County
Defendants, the State Defendants quote language from the Second
Circuit's intervening decision to argue that the Second Circuit
held that "[f]urther arraignments on the Greece and Irondequoit
charges were not necessary."  (State Def. Mem. at 5 (quoting
*Ogunkoya*, 913 F.3d at 71).)  As noted, the Second Circuit
considered only whether the two Assistant District Attorneys'
decisions that no further arraignments were necessary were
entitled to absolute prosecutorial immunity, and made no
findings about whether further arraignments actually were
necessary in order for Plaintiff to post bail, or whether
Plaintiff had a constitutional right to further arraignments.
*See Ogunkoya*, 913 F.3d at 72-73.

Therefore, for the reasons stated above, as well as
those in Judge Bloom's R&R and this Court's November 2017 Order,
Plaintiff has adequately alleged the requisite underlying
constitutional deprivation to maintain his substantive due
process claim against the State Defendants.

### B. Personal Involvement and Proximate Cause

The State Defendants argue that the County court clerk
made the decision about whether to process Plaintiff's bail, and
neither State Defendants Eifert nor Schrage were involved.
(State Def. Mem. at 6-10.)  A plaintiff can only allege

constitutional violations against officials who were "personally
involved" in the deprivation of liberty, *Wright v. Smith*, 21
F.3d 496, 501 (2d Cir. 1994), and the State Defendants argue
that the involvement of another actor could break the chain of
causation, thus rendering Eifert and Schrage not liable.  The
Second Circuit has held that personal involvement for purposes
of a constitutional violation includes instances in which
officials "exhibited deliberate indifference to the rights of
inmates by failing to act on information indicating that
unconstitutional acts were occurring." *Colon v. Coughlin*, 58
F.3d 865, 873 (2d Cir. 1995).

          Judge Bloom previously found that Plaintiff adequately
alleged that both State Defendants Eifert and Schrage were
personally involved in the failure to arraign Plaintiff, which
allegedly led to his inability to post bail.  (*See* R&R at 21
n.18 ("As alleged by plaintiff, Schrage brought plaintiff to his
initial arraignment and was specifically directed by the
Henrietta Judge to have plaintiff arraigned on the four
additional charges drafted by Eifert," but Defendants never
did.).)  This court agreed.  Plaintiff alleged that Schrage was
"explicitly directed by the judge to bring plaintiff for
arraignment in Greece and Irondequoit, and represented to the
judge that [he and his colleague] could do so by the next

business day, but did not." (Nov. 11, 2017 Order at 18.)
Plaintiff further alleged that Eifert was "aware of the need to
arraign plaintiff on the outstanding complaints, demonstrated by
the fact that he called the District Attorney's office to
inquire" about what to do about those charges. (*Id.*) The court
accepted those facts as true for the purposes of deciding
Defendants' earlier motions to dismiss, and the personal
involvement of Eifert and Schrage will not be re-litigated at
this stage. *See Naples*, 2015 WL 541489, at *5.

Moreover, the question of whether the State Defendants
were the proximate cause of Plaintiff's injury is best left for
discovery. Plaintiff's allegation is that the State Defendants
were personally involved in the failure to arraign Plaintiff on
the charges in Greece and Irondequoit, and that the court clerk
refused to process Plaintiff's bail as a direct result of the
State and County Defendants' refusal to arrange for Plaintiff's
arraignment on all of the pending charges. (TAC ¶¶ 59, 73.) At
this stage, Plaintiff's allegations are sufficient for the court
to infer that the State Defendants plausibly caused his
inability to post bail.

### C. Qualified Immunity

The State Defendants argue that they are entitled to
qualified immunity on Plaintiff's substantive due process claim

because "there was no clearly established statutory or
constitutional right establishing . . . a protected liberty
interest in the ability to post bail" at the time of Plaintiff's
detention in 2014.  (State Def. Mem. at 10-12.)  Government
officials are entitled to qualified immunity "when they perform
discretionary functions if either (1) their conduct 'did not
violate clearly established rights of which a reasonable person
would have known,' or (2) 'it was objectively reasonable to
believe that their acts did not violate these clearly
established rights.'"  *Young v. Cty. of Fulton*, 160 F.3d 899,
903 (2d Cir. 1998) (quoting *Soares v. Connecticut*, 8 F.3d 917,
920 (2d Cir.1993) (alteration omitted).

        In order to assess this question, the court must
"define with specificity the constitutional right at issue."
*Simon v. City of New York*, 893 F.3d 83, 96 (2d Cir. 2018).
Plaintiff asserts that the right at issue is, broadly, the
Plaintiff's liberty interest in the "right to freedom pending
trial," which "is inherent in the Due Process Clause."  (Opp. at
20.)  The State Defendants, on the other hand, would have the
court construe the right more narrowly: as the right to the
ability to post bail.  (State Def. Mem. at 11-12.)  The court's
task "involves striking a balance between defining the right
specifically enough that officers can fairly be said to be on

notice that their conduct was forbidden, but with a sufficient
'measure of abstraction' to avoid a regime under which rights
are deemed clearly established only if the precise fact pattern
has already been condemned." *Simon*, 893 F.3d at 96−97
(citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 741
(2002) ("[O]fficials can still be on notice that their conduct
violates established law even in novel factual circumstances.").

With the foregoing principles in mind, the court
defines the right at issue in this case as the right not to be
deprived of liberty after bail has been set as a result of
government officials' failure to arraign an individual on all
charges following a warrantless arrest.  In reaching this
definition, the court finds the Second Circuit's decision in
*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) instructive.  In
*Zahrey*, the plaintiff alleged wrongful detention as the result
of a prosecutor conspiring to manufacture false evidence against
him.  221 F.3d at 347.  The Second Circuit considered defining
the right as, on one hand, the broad right not to be detained as
a result of government misconduct, or on the other hand, as the
narrower right to not have a prosecutor fabricate evidence.  *Id.*
at 348-49.  Ultimately, the court defined the right as "the
right not to be deprived of liberty as a result of the
fabrication of evidence by a government officer acting in an

31

investigating capacity." *Id.* at 349.  Although the plaintiff's

claim was "premised on the manufacture of false evidence," it

was "not limited to that act," but was rather "an example of a

classic constitutional violation: the deprivation of his liberty

without due process of law." *Id.* at 348.  This definition

required not only that a plaintiff be deprived of liberty, but

that the deprivation "be shown to be the result of [the]

fabrication of evidence." *Id.* at 349.  The question in this

case, therefore, is not necessarily whether Plaintiff had a

constitutional right to post bail after being arrested, but

rather, whether the State Defendants caused Plaintiff's

deprivation of liberty by failing to meet their constitutional

obligations to bring Plaintiff for arraignment on all charges so

that he could post the bail that had been fixed.

The essence of Plaintiff's complaint is that he had a

right to be arraigned in Greece and Irondequoit on the charges

on which he was arrested without a warrant, and to which he

proclaimed and enjoyed a constitutional presumption of

innocence, so that he would not be detained longer than

necessary.  As discussed in this court's prior decision, the

Supreme Court has held that when "an arrested individual does

not receive a probable cause determination within 48 hours," the

government bears the burden of disproving a constitutional

violation.  *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 57
(1991).  Plaintiff thus had a clearly established right to "be
given a hearing into probable cause for the arrest within 48
hours," either through an arraignment or some other procedure,
barring "extraordinary circumstances." *Bryant*, 404 F.3d at 138.
The requirement of a prompt probable cause determination is
meant to "minimize the time a presumptively innocent individual
spends in jail." *McLaughlin*, 500 U.S. at 58; *see United States
v. Abuhamra*, 389 F.3d 309, 318 (2d Cir. 2004) ("the interest in
being free from physical detention by one's own government" is
"the most elemental of liberty interests") (quotation omitted).

The State Defendants were on notice that Plaintiff had
a constitutional right to an arraignment so that his liberty
interests would be protected. *See Allen v. City of New York*,
2007 WL 24796, at *18 (S.D.N.Y. Jan. 3, 2007) (officials "cannot
intentionally delay an arraignment for no reason").  The State
Defendants arrested Plaintiff without a warrant, and Defendant
Schrage represented to the judge in Henrietta that Plaintiff
would be arraigned on the Greece and Irondequoit charges the
next business day.  (TAC ¶¶ 35-37.)  Plaintiff alleges that as a
direct result of the State Defendants' failure to do so, he was
unable to post bail, and was thus deprived of his "most
elemental of liberty interests." *Abuhamra*, 389 F.3d at 318.  It

33

was clearly established that the State Defendants were obligated to have Plaintiff arraigned on those charges, and under *McLaughlin*, they were on notice that their failure to do so could result in a presumptively innocent individual remaining detained longer than necessary.  Qualified immunity is, therefore, not appropriate at this time.

The State Defendants will have an opportunity to move for summary judgment if discovery reveals an absence of any material factual dispute as to whether the State Defendants prevented Plaintiff's arraignment.  However, a defendant asserting a qualified immunity defense on a motion to dismiss "'faces a formidable hurdle . . .' and is usually not successful," because the court must accept a plaintiff's alleged facts as true.  *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir.2006) (quoting *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004)).

At this stage, Plaintiff has sufficiently alleged a substantive due process claim against the State Defendants.  The State Defendants' motion to dismiss is, therefore, denied.

## Conclusion

For the foregoing reasons, the court grants the County Defendants' motion to strike Plaintiff's claim for punitive damages against the County, and denies the County Defendants'

motion to dismiss the *Monell* claim.  The court denies the State Defendant's motion to dismiss Plaintiff's substantive due process claim.

Based on the foregoing and the court's previous decision, this case will proceed to discovery on the following claims: (1) false arrest and failure to intervene in the false arrest against all State Defendants; (2) violations of substantive due process and failure to intervene in the violations of substantive due process against State Defendants Eifert and Schrage; (3) false arrest and false imprisonment against all State Defendants; (4) malicious prosecution and failure to intervene in the malicious prosecution against Eifert and Schrage; and (5) the municipal liability claims against the County of Monroe.  Plaintiff may not recover punitive damages from the County.

**SO ORDERED.**

Dated:     Brooklyn, New York
           July 7, 2020

                                    _____/s/_____
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge

35